Ruffin, C. J.
 

 The law, affecting this controversy, has been so often discussed in modern times, that it has come to be well understood, we believe. A creditor is not bound to a surety for active diligence against the principal ; for it is the contract of the surety, that the principal shall pay the debt, and it is his business to see that'
 
 *97
 
 he does. Therefore, forbearance merely, the omission to sue, or, after suit, to take judgment, or to sue out execution, although it may be from the wish not to distress the principal, and the consequence of communications from him, and although the creditor may not inform the surety of the principal’s want of punctuality, will not discharge the surety. The reason is, as was just mentioned, that it is the duty of the surety to himself, and to the creditor, to look to those things himself — the ability and punctuality of his principal; and, if there be reason to doubt them, it is his own folly not to ascertain the fact, and request the creditor to press for payment, or, if the creditor does not ehoose (as he is not bound) to incur the trouble and expense of suing, then to pay the debt himself, and prosecute the claim in his own name, or in that of a trustee for him. But if the creditor parts from a security held by him, either for favour to the principal or from any other motive of bad faith to the surety, or, without the privity of the surety, makes a contract with the debtor for forbearance, so that he cannot rightfully sue him, and thus disables himself to receive payment from the surety, and transfer to him his securities at any moment, the surety may require it of him: in such eases he discharges the surety. For, while the creditor is not bound to diligence, he is bound not to increase the risk of the surety by any act of his; and if he does any thing that has that effect, he can no longer look to the surety.
 
 Nisbet
 
 v.
 
 Smith,
 
 2 Bro. C. C. 579.
 
 Rees
 
 v.
 
 Barrington, 2
 
 Yes. Jr. 539.
 
 Samuel
 
 v.
 
 Howarth, 3
 
 Meriv.
 
 272. Bank of Ireland
 
 v.
 
 Beresford,
 
 6 Dow. P. C. 233. To these might be added many American cases to the same purpose. Lord Eldon, in the cases, lays down the rule almost in so many words, as it has been just stated. And in
 
 Nisbet
 
 v.
 
 Smith,
 
 where the creditor had, at the request of the surety, brought a suit against the principal, and dismissed it, and took a warrant of Attorney to confess judgment with a stay of
 
 *98
 
 execution for three years, if the interest should be paid, Lord Thurlow said, that it was contrary to the faith of the action, which had been brought,
 
 to give
 
 credit to the principal beyond the term stipulated in the bond; and that, as the creditor had thought fit to compromise the action, under an idea, that the surety would comply, the case was brought to the mere question, whether the surety should be obliged to remain bound ior the prolonged term: and he held, that he should not.
 

 It is to be considered, then, whether there was here an indulgence to the principal, without the privity and assent of the plaintiff; and whether that was done upon an agreement for forbearance, which legally or equitably put it out of the power of the creditor to enforce payment from the principal for some period.
 

 As to the first parts of the enquiry', there can be no dispute. The answer admits over and o\er, that the defendant agreed to give up the action he had brought, and to indulge the principal — how much longer, it does not say. But, in point of fact, the indulgence was extended for eighteen months longer or more. Now, although that suit had been brought at the instance of the surety, as in
 
 Nisbet
 
 v.
 
 Smith,
 
 yet the defendant had no communication with the surety on the subject. He says, that his reason was a conviction; that the plaintiff already knew, that McNider intended to apply for indulgence, and that be had given his consent, that it should be granted ; and but for that belief, that he would not have agreed to indulge at all. But the plaintiff denies, in general terms, all knowledge upon the subject, and McNider fully confirms the denial, as far as he had any information, and states positively, that he did not show the plaintiff the sheriff’s letter, nor communicate to him his purpose 'to apply for indulgence, nor his success in the application he made. There is, therefore, no evidence to charge the plaintiff with a concurrence, express or implied, in the new arrangement, whatever it was. It is probably truo, accord
 
 *99
 
 ing to the answer, that McNider informed the defendant, that the plaintiff knew all about what was going on, and approved of it entirely. He, no doubt, on that day, told the several gentlemen who have been examined for the defendant, that such were the facts. But though his declarations then may go to his credit as a witness in this cause, they cannot establish affirmatively, that he did impart to the plaintiff the information, which he now swears, he did not. It was a blind credulity in the defendant to trust to the representations of a distressed debtor, begging for delay, almost upon any terms, as to the wishes of his surety, that a suit, brought upon his motion, should be withdrawn and a protracted indulgence extended. It was the creditor’s duty to obtain the surety’s express concurrence ; and it can hardly be believed, that but for some extraordinary advantage expected from Mc-Nider’s proposal, the defendant would not have asked, why he did not bring a letter from Pipkin, and tell him, then, to go back .and get one.
 

 Then, as to the other point, whether there was a binding contract for forbearance — one founded upon a consideration and disabling the creditor for a time to sue. The statement in the bill is, that in consideration of $100 paid, or secured to be paid by McNider’s note (over and above the legal interest accruing on the original bond) the defendant undertook to McNider, to forbear for a year or some other certain period. If that be true, the case is clearly within the principle we have before laid down, as extracted from the cases. That it is substantially true the testimony of McNider fully establishes, if it be credible. He says, that he did not pay the defendant any sum for the indulgence, but that he gave a note for $100 as the consideration for his agreement to dismiss the suit, and forbear another suit for a further certain time then named, though he was unable in his deposition to designate the precise period. The defendant .offers no evidence to contradict the witness, as to the
 
 *100
 
 facts stated by him ; and even the answer itself, as will be more distinctly pointed out hereafter, does not unequivocally oppose any part of this testimony, and does not at all oppose a most material part of it. The defence rests upon an attempt to discredit the witness by proving, that, in relation to the concurrence of the plaintiff in the arrangement, he made different representations at the time from those contained in his deposition ; and that such is likewise the case as to what he said upon the subject of usury.
 

 With respect to the last, it may be remarked at once, that there is nothing in this cause to shew, that he is self-contradicted. lie said the loan of $932 80, was made without usury. He does not now say otherwise. When he heard that some persons were trying to discover a case of usury, on which they might sue this defendant for the penalty, he said that the defendant need not be afraid, for he would swear that he had never
 
 paid
 
 him money ; and he does not say the contrary now,' nor is it proved. He says, he gave the defendant a bond for $100, of usurious interest; but it is not pretended that he ever paid it, and consequently neither the original bond, (for $932 80,) was thereby avoided, nor the penalty incurred. All that was in it, was, that if sued on the small bond for $100, and he chose to plead the statute of usury, that bond would be avoided; but, upon that point, it does not appear, that he ever spoke.
 

 The false representations of the witness respecting his pecuniary condition, and the plaintiff’s knowledge of it, and willingness that he should be further indulged, certainly affect his credit materially; and by themselves — . their effect not repelled by other circumstances in support of his credit and tending to shew that, in substance, his evidence is true — they might impeach his credibility, so far that the Court could not safely decree on his evidence. But, we think, that taking every thing together, the confidence, ordinarily due to statements on oath, cannot be
 
 *101
 
 denied to those of this witness. It is to be feared, that many men receiving and entitled to full credit as witnesses, when they find their pecuniary credit suspected and ruin impending over them, resort to very, unjustifiable shifts to conceal their condition, and are even betrayed into representations positively untrue, in order to put off the evil day of an explosion and open bankruptcy. New things are better calculated to prop sinking credit, than to get it to be believed, that sheriffs, sureties, and moneylenders — all of whom are usually supposed to look narrowly into people’s affairs — have investigated one’s condition,.and are satisfied, it is sound. Motives of this kind might, and probably did, influence the witness upon the occasions under consideration; and this, and cases like it go far to prove the wisdom of the rule of evidence in
 
 the Queen’s case,
 
 that evidence of the declarations of a witness shall not be heard to affect his credit, until he has been asked, whether he made those declarations, so that he may be enabled to explain them, and his motives, in the first instance. For, although such falsehoods are very unjustifiable upon whatever motive they be uttered, they cannot condemn a person so far as to render him alto-, gether unworthy of belief, when it appears that they were made upon such motives as have been mentioned, and that, in all other respects,' he has acted uprightly and is deemed by the public at large a man of good character and credible on oath. This man is so proved to be ; and the defendant acquiesces in the proof, and offers none of a bad character. Then, there are the circumstances of the case, which tend strongly to corroborate his statement. The facts, that the suit was dismissed, and that no other suit was brought for a long time afterwards, cannot be questioned, and are difficult to be accounted for, unless upon some such grounds as those stated by the witness. But, above all, the credibility of this statement is placed almost beyond doubt, because, although the bill makes the charge directly, that the defendant took the
 
 *102
 
 bond for $100, as the consideration for forbearance, the answer does not deny it. It is to be noted, that the bill says, the sum of $100 was either paid or secured. The defendant, as rightfully he might, demurred to that part of the bill, which seeks a discovery of the alleged consideration of $100,
 
 paid
 
 by McNider; but the demurrer takes no notice of the alternative allegation, that if not paid, it was
 
 secured
 
 to be paid by note — which latter happens to be the fact here, according to this witness. It is somewhat surprising, that the plaintiff did not insist on an answer to that allegation, as the defendant did not object in a legal way, by demurrer, to answering it. But, he did not; and consequently the plaintiff could not have safely set the cause down for hearing on bill and answer, as the affirmative allegation of the bill is not established by the omission in the answer of a denial, and the plaintiff must prove his case. But when such proof is offered by the plaintiff by calling a witness, who and the defendant are the only persons cognisant of the fact, it is a powerful confirmation of the credit, to which the witness’s character entitles him, that the defendant, with full knowledge of the truth, does not venture to state the contrary on his oath. The answer neither admits nor denies, that the defendant took such a note. If it had plainly and positively denied it, the established rule of the Court would have refused a decree upon the evidence of a single witness in opposition to it. But, although the defendant submitted to answer the whole bill, except a particular part, not including this point, yet he is not able to deny the essential fact, on which the cause turns, and to which the witness positively deposes, and the defendant had every reason to suppose he would depose. What stronger support to the credit of the witness on that point could be asked
 
 1
 

 Then the Court must declare it to be established, that the defendant, as charged in the bill, took a bond from McNider, for $100, as the price of giving him indulgence
 
 *103
 
 on the debt for which the plaintiff was surety. That was a sufficient consideration to make the contract for time binding, if any particular time was agreed on, so as to constitute a definite agreement. Upon that point also the witness is positive, that there was a precise time named, though he was then unable to state it. On this the answer is not silent as it was on the other. The answer, however, is far from being direct, candid, and satisfactory on it. It denies that the defendant “ entered into contract or agreement with McNider, whereby he was under any
 
 legal
 
 obligation to forbear proceeding on said bond, by suit, for one moment.” Now, this involves matter of law as well as fact; and it may be that the salvo in the defendant’s mind for stating the matter thus, is, that though he entered into an agreement, he thinks it is not legally obligatory. He ought to have set forth what the agreement was, and left it to the Court to judge of its legality and obligation. He admits he granted indulgence For what time, on what consideration, he should have said. There is not, therefore, such a conflict between the answer and the witness, as precludes the Court from decreeing on the testimony of a single witness. But, if there were, the evidence of the witness is so supported by corroborating circumstances, as to give to it the preponderance. For, when it is once found by the Court that the defendant took the bond of the debtor for $100, the question immediately occurs, for what reason, on what account was it taken ? To such a question, there can be but one answer, when it is admitted, that at the same time the defendant “agreed to indulge” the debtor, and agreed further, that, at the next Court, he would dismiss a suit he had brought on this debt; and that is, that the indulgence agreed for must have been, at least, until the next Court. Without proof to the contrary, it must be the construction of an agreement fora price, to withdraw a suit at a certain future time, that the party shall not be at liberty to evade the agreement by bring
 
 *104
 
 ing another suit immediately, or before the time when the pending action was to be withdrawn. The witness cannot
 
 specify
 
 the time fixed by the
 
 agreement;
 
 though there is every probability that the forbearance agreed for, like that actually granted, was much longer. However, that may be, as men of common sense, with even a very slight acquaintance with the common course of dealing, we are obliged to perceive, that the parties must have perfectly understood, that no suit should, at all events, be brought before the next term of the Court. For the purposes of the relief here, that is the same as a longer forbearance, because, as Lord Eldon said in,
 
 The Bank of Ireland
 
 v.
 
 Beresford,
 
 the defendant thereby put it out of his power to make good his engagement to enforce
 
 immediate
 
 payment from the principal, whenever the surety should have a right to require him to do so. And in
 
 Rees
 
 v.
 
 Barrington, after
 
 remarking, that the
 
 creditor had
 
 disabled himself to do that equity to the surety, which he has a right to demand, he proceeded to say, that it is the most evident equity, that the creditor should not carry on any transaction without the privity of him, who must necessarily have a concern in every transaction with the principal debtor. He adds also, that he could not try the cause by enquiring what mischief the foi’bearance might have done to the surety ; for tliat would go into a vast variety of speculations, upon which no sound principle could be built. It may be, indeed, beneficial to the surety, that a creditor, for example, should accept a composition from the debtor; yet it is not for the creditor to decide that for the surety, and, therefore, if he does accept a composition without consulting the surety, he undoubtedly discharges him.
 
 Bowmaker
 
 v.
 
 Moore,
 
 7 Price, 231.
 
 Exparte Gifford,
 
 6 Ves. 807. But the prejudice to the surety of such dealings between the creditor and principal is here clearly seen, as the evidence is, that the principal would have been able to pay the whole debt,
 
 *105
 
 had the suit gone on, whereas he could pay nothing when subsequently sued, and the surety had to pay the whole.
 

 The Court is perfectly satisfied, that there was a distinct and definite agreement by the defendant, to forbear on this debt, certainly until the succeeding Court, and, probably, much longer; and that the defendant's promise of forbearance was founded on an agreement of McNider to pay him $100 therefor, secured by his promissory note. Consequently, the plaintiff was discharged, and has now a right to recover back all that he has paid to the defendant for principal, interest, or costs at law, or in equity, with interest on the whole from the time of payment; and there must be a reference to ascertain the sum due on that footing. The defendant must also pay the costs of the cause.
 

 PKR CURIAM.
 

 Decree accordingly.