BANK OF FAYETTEVILLE v. R. M. NIMOCKS and ALEXANDER McARTHUR.

(Decided April 4, 1899).

*Note—Accommodation Endorser—Collateral Security.*

1. Where there is material conflict in the testimony introduced, as it would be impossible for the jury to believe *all* the testimony, what part they shall believe and what they shall reject is for their exclusive determination.

2. Where a note with an accommodation endorser is discounted at bank for the maker, who subsequently lodges with the bank, as collateral security, his note with another solvent endorser, which note the bank, without the knowledge and consent of the accommodation endorser, surrendered without placing any credit therefor on the first note: *Held*, to be a discharge *pro tanto* of the liability of the accommodation endorser.

THIS WAS A CIVIL ACTION, tried by *Bynum, J.,* and a jury, at November Term of CUMBERLAND Superior Court. The defendant R. M. Nimocks made no answer, and judgment by default was rendered against him.

The Judge, after hearing all the testimony, settled the issues, being all that were offered by either side. See the five issues, and the jury's answers thereto, as set out in the record and in the opinion.

The plaintiff's prayers for instruction were in writing, and were all given, as the record shows. The plaintiff excepted to the submission of the first, second, third and fourth issues. The plaintiff requested the Court orally to instruct the jury that if they believed the whole evidence, there was nothing tending to show that the bank had agreed with McArthur to hold the Slocomb note as collateral security to the note sued

upon, and they should answer the third issue, No. His Honor declined so to charge. Plaintiff excepted. The plaintiff excepted to his Honor's charge as given.

The plaintiff moved to set aside the verdict as contrary to the weight of the evidence, and contrary to his Honor's charge.

The motion was overruled. Plaintiff then moved for a new trial, which motion was overruled, and the plaintiff excepted.

There was judgment for defendant upon the finding of the jury, and plaintiff excepted and appealed to the Supreme Court.

The Court cautioned the jury that they were to rely upon their recollection of the testimony, and not upon the Judge's notes, if they were inconsistent with the jury's recollection of the evidence; that the Judge's notes were only memorandums of the testimony of the witnesses, and they were read to the jury to refresh the recollection of what the testimony was.

The testimony was as follows:

H. W. Lilly: The note sued on is shown witness, and he says it is owned by the Bank of Fayetteville. The bank bought the note for value before maturity, and without notice of any equity; came to bank endorsed by McArthur, as appears on the note; $821 due on it now.

Am president of the bank, and was when note was bought by bank. Two drafts on Cooperage Company lodged with the bank at same date, and the proceeds were applied to the payment of the note. Explains certain entries in the collection book of the bank. The bank held for collection a note executed by R. M. Nimocks and endorsed by A. H. Slocomb for $1,000. This note was delivered to Slocomb 29th May, 1897. It was received by the bank 15th January, 1897. It became due March 4th, 1897. Between the 4th of March and 29th

124—23

of May, 1897, Nimocks became insolvent. I told McArthur after the note had become due, that Nimocks had left some papers with the bank for collection, and the bank would not press suit against him on the Nimocks note until we could see if we could collect them. Told McArthur that the proceeds of the Slocomb note, if collected, would be applied to the payment of the Nimocks note. We tried to collect the Slocomb note, but could not do so. I called Slocomb's attention to the fact that the bank had Nimocks' note endorsed by him, and that it was past due; that it was a matter of no concern to the bank, except we held it for collection. We considered the McArthur note good.

*Re-direct.*—The $1,180 credit on note was paid in cash. The two drafts, the proceeds of which are credited on the note, were left with the bank for collection. At the time we had the two drafts we did not have the Slocomb note. The bank never had title to the Slocomb note. Notified McArthur that we would not sue on his note until we could see if we could collect the papers left with us by Nimocks for collection.

Order from R. M. Nimocks, dated May 27th, 1897, directing the bank to deliver to Slocomb the note of Nimocks endorsed by Slocomb introduced.

The bank had no control of this note. Notes and other papers deposited as collateral are kept by the president and cashier in a tin box. The Slocomb note was not put in that box. Make no entry of collateral papers.

The plaintiff rests.

The defendant Alex. McArthur demurs to the evidence under the Act of 1897. Demurrer overruled, and defendant excepts.

Alex. McArthur, defendant: The president of the bank, Dr. Lilly, insisted from time to time on my renewing the

note in suit. I would get after Nimocks about it. I saw Dr. Lilly, the president of the bank, shortly before Nimocks' assignment, and he said, that's all right. What we were talking about (having reference to the Slocomb matter) ; that he had Slocomb's note. I asked him for my note, and he said he could not give it to me—it had not been paid. I asked him if he considered Slocomb good. He said he did. He afterwards told me that Slocomb had got his note; that it was not the bank's note. On receipt of a letter from Dr. Lilly, I came to Fayetteville to see about it. Nothing was said further to me by Lilly or any other officer of the bank about the note until after Nimocks became insolvent. Never had any notice that the Slocomb note was going to be surrendered. Did not consent to it. I relied on what Dr. Lilly said about the Slocomb note.

Lilly did not refuse to discount Nimocks' note, and did not tell me he would not swap it off for anybody.

A. A. McKethan: In May, 1897, I was director and vice-president of the bank. McArthur told me some time before 1897 that he was liable to the bank for $3,000 for Nimocks, and was uneasy about it. After the conversation with McArthur I looked at the books of the bank, found this entry in the collection book of the bank: "January 15th, 1897, Bank of Fayetteville credit to discount 15 757 A. H. Slocumb, R. M. Nimocks, December 31, 60 days, March 4th, $1,000." I asked one of the officers of the bank what 15 757 meant, and he said it was Alex. McArthur's note. Never heard anything more of the matter until ten or fifteen days before Nimocks failed. I was in the bank with the president and Mr. Slocomb. Mr. Slocomb was arranging some of his endorsements for Nimocks. The president called his attention to another $1,000 note on which he, Slocomb, was endorser for Nimocks, and told him the note he referred to was not the

property of the bank, but was held for collection, and it was past due. The second day after the assignment I was in Nimocks' store and found McArthur there. The next I knew of the note was the day of its delivery to Slocomb. Dr. Lilly called me over to the bank, took me in the cashier's room, the cashier being present, and said Slocomb had applied to him at the hotel for the surrender of his note of $1,000; that he had declined to surrender it to him, but Slocomb had then gone to the bank and procured the note from the cashier. I told the cashier I thought it singular that he would surrender it, when he produced an order from Nimocks for the surrender of the note to Slocomb. I told cashier he had made a mistake—to save his bond he had better go and get the note. Dr. Lilly approved of this course and the cashier did go after it, but did not get it. When I examined the entry on the collection book, I have no reccollection of seeing the entry "if paid," which now appears on the book. Common sense would teach that the entry means that the proceeds of the note, if collected, were to be applied to the E. McArthur note. If the application had been actually made, the note would not have been entered in the collection book.

McArthur recalled: I endorsed the note for Nimocks' accommodation. I think the bank knew that.

Defendant closes.

Plaintiff resumes.

Dr. Lilly recalled: Says the bank did not know that the note was for Nimocks' benefit.

H. J. Marsh: I was discount clerk in the bank at the time this note was received by the bank. (Explains the ink and erasure; entry "if paid" was contemporaneous with the other. He made the entries).

A. H. Slocomb: The bank never discounted the $1,000 Slocomb note. In April I was in the bank, and the president

called my attention to this note of Nimocks' with my endorsement. Nimocks gave me an order for the note. I went and got it. The bank held the note for collection. Nimocks' assignment was made May 19th, 1897. Did not know that McArthur had any connection whatever with this note. Lilly told me the Slocomb note was not the property of the bank. The note had no date to it.

John C. Haigh, cashier of bank: The note signed by Nimocks and endorsed by Slocomb was held by the bank for collection. If it had been held as collateral, it would have been placed in our box and entered on another and different book. McArthur came in to see Lilly, and I took him in to see Lilly. Lilly told McArthur that the bank held the Slocomb note merely for collection, and that the bank would not surrender McArthur's note until it was paid. The bank had no title to the note.

The Court submitted the issue tendered by the plaintiff and also those tendered by the defendant.

The plaintiff excepts to all the issues except the fifth.

The Clerk will send up the within as the statement of the case on appeal; also the pleadings, issues, and judgment.

W. P. BYNUM, JR.,

Judge Presiding.

*Issues.*

1. Was the defendant McArthur an accommodation endorser and surety for Nimocks' on the note sued on in this action?

Answer. Yes.

2. Did the bank have knowledge of that fact when it took the note?

Answer. Yes.

3. Did the plaintiff agree with the defendant McArthur

BANK *v.* NIMOCKS.

to hold the Slocomb note of $1,000 as collateral security, and to apply it to the note sued on in this action?

Answer. Yes.

4. Did the plaintiff surrender and part with the Slocomb note without the knowledge and consent of McArthur, and without placing any credit therefor on the note sued on in this action?

Answer. Yes.

5. Is the defendant McArthur indebted to the plaintiff? and if so, in what amount?

Answer. Nothing.

*Mr. R. P. Buxton,* for plaintiff (appellant).

*Messrs. N. W. Ray, N. A. Sinclair* and *D. H. McLean,* for defendant.

DOUGLAS, J. The plaintiff brought this action upon a promissory note for $3,000, executed by the defendant Nimocks to the defendant McArthur, and by him endorsed to the plaintiff. There were certain admitted credits upon the note. The defendant McArthur hereinafter called the defendant, as Nimocks made no defence, alleged that the plaintiff discounted the note for Nimocks, well knowing that the defendant was only an accommodation endorser; "that for his protection and to save himself against loss by reason of said accommodation endorsement on said note, he procured Nimocks to lodge with the plaintiff bank collaterals ample in value to secure the payment of the note, the net proceeds of which were to be applied by the bank to the payment of said note, and the bank well knew of the arrangement and purpose for which the collaterals were so deposited with it, and this defendant is informed and believes that the credits on the note were the proceeds of part of the collaterals which the plaintiff collected and applied the net proceeds in accordance with said agreement. The bank still held as part of the col-

BANK v. NIMOCKS.

laterals, so deposited with it to secure the note, a note or obligation for payment of $1,000 and interest, amounting to more than the balance due on the $3,000 note, on which collateral note or obligation said Nimocks and one Slocomb were liable, and said collateral note was solvent and ample to secure the payment of the balance due on the $3,000; that thereafter the plaintiff so holding the collateral note, without any notice to this defendant and without his knowledge, surrendered said collateral note to said Slocomb without making any credit therefor on the $3,000 note, and refused to account for any proceeds of the same or the value thereof, and as this defendant is informed and believes, said collateral note has been destroyed."

In its replication the plaintiff denied that the note for $1,000, made by Nimocks and Slocomb, was deposited with or held by it as collateral security to the note sued on.

The issues and answers thereto were as follows:

1. Was defendant McArthur an accommodation endorser and surety for Nimocks on the note sued on ? Ans. Yes.

2. Did the bank have knowledge of that fact when it took the note ? Ans. Yes.

3. Did the plaintiff agree with defendant McArthur to hold the Slocomb note of $1,000 as collateral security and to apply it to the note sued on ? Ans. Yes.

4. Did the plaintiff surrender and part with the Slocomb note without the knowledge and consent of McArthur and without placing any credit therefor on the note sued on ? Ans. Yes.

5. Is defendant McArthur indebted to the plaintiff, and if so, in what amount ? Ans. Nothing.

The plaintiff excepted to the submission of the first, second, third and fourth issues, but as it states no ground of exception, and none suggests itself to our minds, it can not be sustained.

The only exception seriously pressed was that to the refusal of the Court to instruct the jury that "if they believed the whole evidence, there was nothing tending to show that the bank had agreed with McArthur to hold the Slocomb note as collateral security to the note sued on, and they should answer the third issue, 'No.'" As this instruction could not properly have been given, there was no error in its refusal. It is well settled that no such instruction can be given where there is any material conflict in the testimony, as it would be impossible for the jury to believe *all* the testimony, and what part they shall believe and what they shall reject is for their exclusive determination. Of course this rule applies only to admitted evidence, as the jury can not consider evidence excluded by the Court or withdrawn from their consideration. The competency or mere existence of the evidence is a qustion of law for the Court, but its weight is a question of fact for the jury. In all such cases the request for such an instruction presumes the truth of the evidence as construed in the light most favorable to the adverse party. *Cable v. Railway Co.,* 122 N. C., 892; *Cox v. Railroad Co.,* 123 N. C., 604.

In the case at bar there was ample evidence to go to the jury. The defendant testified that the president of the bank, shortly before Nimocks' assignment, told him that the Slocomb note was alright. Witness McKethan testified in part as follows: "In May, 1897, I was director in and vice-president of the bank. McArthur told me sometime before 1897 that he was liable to the bank for $3,000, for Nimocks, and was uneasy about it. After the conversation with McArthur, I looked at the books of the bank and found this entry in the collection book: 'January 15, 1897, Bank of Fayetteville credit to discount 15 757, A. H. Slocomb, R. M. Nimocks, December 31, 60 days, Mar. 4th, $1,000.' I asked one of the

officers of the bank what 15 757 meant, and he said it was Alexander McArthur's note." It is a common custom among banks to enter all bills receivable, whether discounts or collections, in the proper books, under consecutive numbers, and a reference to this serial number identifies the paper. The jury might well conclude that this entry meant that the proceeds of the Slocomb note had been credited to the note now in suit.

The plaintiff contends that the so-called Slocomb note, which was executed by Nimocks as principal and Slocomb as surety, was placed in the bank by Nimocks merely for collection. In nearly all transactions there are certain inherent probabilities, which are strongly marked in the case at bar. It seems scarcely reasonable to suppose that the maker of a note, remaining still its owner, should place his own note in bank to be collected from himself and placed to his own credit. It seems more probable that the surety was willing to endorse for only a thousand dollars and that the maker, needing a greater sum, was willing to relieve his principal endorser *pro tanto* by the deposit as collateral security of the smaller note. This view was undoubtedly taken by the jury.

Cases are often complicated by the testimony of witnesses, who, however honest may be their intentions, testify to assumed facts which are in reality merely conclusions of law.

Viewing the Slocomb note as collateral security to the note in suit, its surrender to Slocomb without the consent of the defendant operated as a release *pro tanto,* and as it was for an amount greater than the balance due on the note in suit, the judgment must be affirmed. *Cooper v. Wilcox,* 22 N. C., 90; *Nelson v. Williams, Ibid,* 118; *Pipkin v. Bond,* 40 N. C., 91; *Bell v. Howerton,* 111 N. C., 69.

Affirmed.