Gaston Judge.
If this case come within the operation *295 of our act of 1827, 1 Rev. Stat. c. 13, s. 11, the plaintiff is entitled to judgment, but if it do not, then according to the agreement of-the parties, there"must be a judgment of non-suit. We have heretofore had cause to regret that the statute in question, was expressed in such general and obscure terms as not to afford to those whose duty it is to execute the law, the means of knowing with certainty the intention of the law-makers. We feel the same regret on this occasion, because in regard to the matter now before us, there is at least equal danger of mistaking that intention.
0v¡..et 3°^®’ Sun. eh is Ji,e enchW!’ a note liable not ’ to si=ne<i the atml-ety — not if wi|h-out consfde-nor protection winch the acts ofiim-/nation had extended to to change meat ”vhich the law theretofore framan dorsement ed to be course1 into an engage-the note to a?aiu°enTs if the maker did not pay it.
*295 Before the passing of the act of 1827, the law implied from the endorsement of a negotiable note an engagement, from the endorser, similar to that which the law' of merchants imposed on the drawer of an accepted inland bill of exchange. He engaged that the- maker of the note should pay it, if presented at the time and place when the same was made payable; and if the maker made default, that he would pay the same if notified of that default, and required to make ment without delay. We have held, Williams v. Irwin, 3 Dev. & Bat. 74, that the object of the act in declaring the endorser liable as. surety, was not to bind Inm as though had signed the note with the maker as surety — not to make him liable to the endorsee, if the endorsement were made without consideration — nor to deprive him of the protection which the acts of limitation had extended to endorsers — but simply to change the engagement which the law theretofore^ implied from an endorsement not expressed to be without course into an engagement to pay the note to the holder, all events, if the maker did not pay it. In coming to conclusion, we did not advance any pretension to deny ration.to the statute where it was productive of absurd consequences; but in the construction of vague terms, we , , . , . , ered ourselves bound to presume that the Legislature ed nothing plainly repugnant to justice and public con ence. Our purpose was to give full operation to all that the J 1 ° 1 Legislature willed; but, at the same time, not to intend, from ° , „ , . , an affected or superstitious veneration for the semblance oí their will, that to have been enacted, which we believed they did not mean to enact, and therefore, in fact, had no.t enacted. Their meaning was the whole end, aim and object of our enquiry.
*296 Pursuing the present investigation in the same spirit, I think that we shall be brought to the conclusion, that the act of 1827, does not operate upon an endorsement, where it cannot operate upon the preceding endorsements. The endorsement of a note, previously negotiated without the State, is not, in the opinion of the court, distinctly embraced with-the words of the act, and was not within the view of its ma]jers The language of the enacting clause is, “that where any bill, bond, pr promissory note, made negotiable by the act of 1762, entitled &c., or by the act of 1786, entitled shall be endorsed after the first day of July next, such endorsement, unless it be otherwise plainly expressed therein, shall render said endorser, or endorsers, liable as surety or sureties, to any holder of such bill, bond or promissory note.” , , , , , ■ , . , , It is admitted that the act has no operation, and was intended to have no operation on an endorsement made out of the State; but that such indorsement was left to take effect according to the custom of merchants, or the law of the particular State in which it was made. The act, therefore, is to receive the same construction, as if, in words, it had said “where any bill, bond or promissory note, made negotiable, &c., shall, after the 1st of July next, be endorsed within the State.”— Upon the words themselves, it would seem that the Legislature had before them, as a subject of legislation, the case of a note, bill or bond, to which antecedent acts had given the, character of negotiability, but which had not yet been negotiated. While proceeding to declare the engagement which • the endorsement of such an instrument should create on the partoi the endorser, and contemplating directly the first endorsement only ,it occurred to them, before their purpose had been finally declared, that, as every endorsement was like the drawing of ,a new bill, whatever liability was made to attach to the first endorser, the same, of consequence, extended tosubsequent endorsers; and thus, although but one act of endorsement is mentioned in the body of the act, the words “or endorsers” were inserted after endorser, and the words “or sureties” added after surety. And this view derives some support, or perhaps illustration rather, from the title'of the act, where, although the word “endorsers” is found, the word *297 “surety,” in the singular, remains yet unaltered. ing every ray of light we can get, to help us on to the object of our search, we find something in the proviso attached to the enacting clause, not altogether useless. The proviso is in these words; “ Provided that nothing herein contained shall apply, in any respect, to Bills of Exchange, whether Inland or Foreign.” Now, it is certain that nothing therein contained, could apply to bills of exchange, whether inland or foreign, simply because neither of them were within the ' words, nor by any interpretation could be brought within the. purview of the enacting clause. The act of 1762 made promissory notes, for the payment of money, assignable by' endorsement in like manner as inland bills of exchange were by the custom of merchants in England; and the act of 1786 made bills, bonds or notes, under seal, for the payment of money, transferable by endorsement, as notes called promissory or negotiable theretofore were. The insertion of the proviso, so wholly inoperative as an exception, while it shews an unusual want of precision in the act, is, at the same time, indicative of an intent which cannot well be reconciled to the sweeping operation which the plaintiff asks for from its enacting words. Notes, after they have been put into circulation by endorsement, acquire, by positive enactments, the qualities of inland bills of exchange; and this extreme legislative solicitude that their enactments should not be extended to inland bills, is hardly reconcilable with the idea that they were meant to operate upon what had, to most practical purposes, acquired the properties of inland bills.— It strengthens the belief that the subject which alone was intended to be regulated by the act, was the circulation of negotiable paper among our own people.
The Court holds, therefore, that the terms of the enactment are not so precise and unequivocal as not to leave fair room for doubt, and to call for explanation; and if so, the results of the one or the other exposition are very fit to be considered in determining the intent of the law-makerS. These justify, as the Court thinks, the conclusion that the act applies in those cases only, where not only the endorsement in question, but all the antecedent endorsements (not expressed to be without *298 recourse) have been made within the State. The act,makes ^le en^orser hable to the holder as a surety — that is to say, liable on failure of the maker to pay, and that without demand on him or notice to the endorser. In applying this strong enactment to the first endorser on a note, wherever made, if first endorsed here, it is to be remarked, that while the law implies this engagement, it preserves for the endorser the rights and remedies of a surety. If the endorser has to pay the note, he has a direct recourse against the principal, who is absolutely liable to him. So in applying the enactment to the next endorser, the very act which makes him surety, gives him all the rights of asurety as against the prior endorser, while by the general law he has them against the maker. But if the act be so expounded as to hold a second or any subsequent endorser responsible as surety to the holder, while by law he cannot hold those primarily liable on the note as principals or responsible absolutely to him, then we attribute, to the act the absurdity of implying the obligations of a surety where they do not exist, and where the law cannot give, the correlative rights of a surety.
' The injustice of such a construction cannot be better exemplified than in,the case before us. It is a principle of natural equity, that no man shall hold another bound to an engagement made in aid of, or as surety for, another, when by his own conduct he deprives the person thus liable of the means of indemnity from his principal. This principle does not require that there should be generally imposed on a creditor, who has two bound to him, the obligation of active diligence against the one primarily liable; for it is not usual for the creditor to have in his hands the control over the surety’s means of redress. Usually, therefore, he is not charged with the care of the surety’s rights. But when these means of indemnity are wholly in the creditor’s Hands, it would’shock good faith to’permit him, either through wilfulness or neglect, to throw them away, hold the surety nevertheless bound, and impose upon him irretrievable losss Capel v. Butler, 2 Sim. and Stewt. 457. By the neglect of the plaintiff in not presenting this note to the maker for payment in reasonable time — which presentation could be, made only by him or *299 those whom he represents — the first endorser on this note, who had guaranteed the defendant against its dishonour, is ° 53 J forever discharged. Can it be just that the plaintiff, who has as effectually taken from the defendant this guaranty as if he had in terms released it, should enforce the payment of the note from the defendant?
It is also unreasonable to attribute to the Legislature an intent which in general would make the act operate unequally against our own citizens. We know that the custom of merchants obtains generally if not universally elsewhere with respect to the endorsement of negotiable notes. If an endorsement of a note in North Carolina is to be construed a peremptory engagement, while all the previous endorsements thereon are special only — the consequences to our citizens would be disastrous. The legislature had no such purpose. Their enactment was intended to apply in a case where they had legislative cognizance of the entire subject matter — the negotiation of the note from the first — and giving it any other construction, would involve absurd, unjust and impolitic consequences — and fix that for law which they did not intend to be law.
It may be said, that although this harsh construction should prevail, it would be in the power of an endorser to escape the-severe enactment, by specially providing in the endorsement;, that he would not be liable to any subsequent holder of the note, unless demand should be made of the maker and notice of the default given to him without delay. Perhaps — probably — the observation is correct, for although doubts have been entertained how far a man can specially limit the negotiation of an instrument (to which the law had given the character of general negotiability, of late,) this has been allowed to a qualified extent. But supposing the suggestion to be undoubtedly correct — and that by the exertion of unusual caution a citizen might save himself from the absurd, unjust and impolitic consequences likely to follow from the transaction— this would indeed afford room to hope that such consequences would not universally result from it — but they do not very materially affect the enquiry whether the legislature intended a rule which would ordinarily lead to such consp? *300 quences. Besides, such special and minute stipulations as . to the effect and character of an endorsement, would be very inconvenient in practice, as affecting- the circulation of negotiable paper, and leading to endless disputes whether the precise degree of diligence stipulated for in the several endorsements had been observed.
Upon the whole, it is the opinion of the Court, that the judgment rendered below is erroneous and ought to be reversed, and that on the case stated there ought to be judgment of non-suit.
Pee. Cukiam. ■ Judgment’reversed.