W. G. LeDUC, Receiver of People's National Bank of Fayetteville, v.
DANIEL BUTLER.

*Statute of Limitations—Relation of Payee Indorser to Maker
of Note—Part Payment by Payee Indorser, effect of.*

Part payment of a note by the payee who has indorsed it, will not repel
the bar of the statute of limitations as against the maker, the
statute (*The Code,* §171) confining the act, admission or acknowl-
edgment as evidence to repel the bar to the associated partners,
obligors and makers of a note.

CIVIL ACTION, heard before *Whitaker, J.,* at January Term,
1893, of CUMBERLAND Superior Court.

The plaintiff sued on a note, with payments indorsed.
The names of H. B. Butler and Daniel Butler are signed
on the face of the note, and it was payable to the order of

E. F. Moore, and was due January 17, 1888, and Moore indorsed it to the bank.

The suit was commenced July 8, 1891. Daniel Butler, one of the alleged makers, denied signing the note, and pleaded the statue of limitations. The other defendant filed no answer. Moore, indorser, made payments to the indorsee, bank, but no payment was made by either of the makers. Defendant appealed from the judgment rendered.

*Mr. R. P. Buxton,* for plaintiff.
*Mr. N. W. Ray,* for defendant (appellant).

MacRae, J.: The question is, Does payment by Moore, the original payee, to the bank, indorsee, repel the bar of the statute as to the makers of the note?

Before the Act of 1827 (*The Code,* §50) the liability of an indorser of a note was the same as that of the drawer of a bill. Presentment and notice of default were necessary to bind him. By force of the act above referred to, unless it was otherwise plainly expressed therein, the indorser became liable as surety to any holder. Soon after its passage a judicial construction became necessary of the words "liable as surety," and it was declared in *Williams* v. *Irvin,* 3 Dev. & Bat., 74, that the effect of the act was to dispense with demand upon the maker and notice to the indorser before action against him; and it was said: "It is not necessary to give to those words, *liability as surety,* the meaning that the indorser should be liable as if he had signed a note as a maker with the principal, or sealed and delivered a bond in like manner." The reasons for this construction are fully set forth by Chief Justice Ruffin. This decision was followed in *Ingersoll* v. *Long,* 4 Dev. & Bat., 293, in which Judge Gaston says: "The object of the statute in declaring the indorser liable as surety was not to

bind him as though he had *signed* the note with the maker as *surety*, nor to make him liable to the indorsee if the indorsement were made without consideration, nor to deprive him of the protection which the acts of limitation had extended to indorsers, but simply to change the engagement which the law theretofore implied from an indorsement, not expressed to be without recourse, into an engagement to pay the note to the holder at all events if the maker did not pay it."

And again, in *Topping* v. *Blount*, 11 Ired., 62: "The sole purpose of that act was to turn the implied conditional contract between the indorser and holder into an unconditional one; and it was not intended to charge the indorser as if he had executed the bond as co-obligor, or upon an indorsement without consideration, or to deprive him of the benefit of the statute of limitations by exposing him to stale demands kept alive perhaps by collusion between the obligor and holder."

In *Nichols* v. *Pool*, 2 Jones, 23: "It was insisted that as by the Act of 1827 an indorser is made liable as surety, when he makes the payment the note is extinguished, and he must sue in *assumpsit* for money paid. The statute provides that an indorser shall be liable as surety to the holder of the note, and no demand on the maker shall be necessary previous to an action against the indorser. The object of the statute was to dispense with the necessity of a demand and notice in order to enable the holder to recover from an indorser, but it does not at all affect the relation of the indorser to the maker; as between themselves their rights remain as they were before the passage of the act."

And it was said in *Johnson* v. *Hooker*, 2 Jones, 29: "The Act of 1827 makes an indorser liable to the *holder* of a note as surety. The effect is to put him on the footing of a maker of the note, and to make his liability to the holder

the same as if his name was on the face of the note instead of being on the back."

A clear distinction is marked in all of these cases, except possibly the last, between the surety and the indorser in their relation to each other.   While to the holder their liability was the same, as to each other they were essentially different.   If the indorser should pay the note he might still erase the indorsement and sue the surety and maker or the joint makers upon the note.   If, however, the surety should pay the note, he could not call upon the indorser as a co-surety for contribution, but his payment operated as a discharge of the indorser from all liability, although by force of the statute he was liable as surety.

In *Green* v. *Greensboro College*, 83 N. C., 449, it was held "that payment of interest by the principal upon a note, before it was barred by lapse of time, arrests the operation of the statute of limitation as to all the makers, sureties as well as principal."   In that case the sureties were makers of the note as well as the principal; there was no indorser.   "The rule is based upon a community of interest in the makers; payment by one was a payment as to all; part payment by one was an acknowledgment of non-payment of the balance and bound all, as the part payment enured to the benefit of all."   2 Greenleaf Ev., sec. 444; *Woodhouse* v. *Simmons*, 73 N. C., 30.   But, as we have seen, the relation of the surety, who was also one of the makers, and the indorser to each other put them in different classes.

Joint acceptors of a bill constitute a class; drawers another; but there is not such a community of interest between them as that a payment by an acceptor would bind a drawer.   The statute confines the act, admission or acknowledgment, as evidence to repel the statute, to the associated partners, obligors and makers of a note.   *Wood* v. *Barber*, 90 N. C., 76.

In *Goodman* v. *Litaker*, 84 N. C., 8, and *Torrence* v. *Alexander*, 85 N. C., 143, there were no indorsers. The sureties whose names appeared upon the bond simply as joint makers desired the benefit of the statute of limitations; and it was held that they must not only prove that they were sureties, but that this fact was known to the obligee or payee.

We conclude that the indorser was not of the same class as the surety, who was a joint maker with the principal, as between themselves, because there was not a community of interest between them; and that a payment by the indorser would not repel the bar of the statute as to the makers.

Indeed, the question as to the relation between Moore and Daniel Butler as sureties would not arise, because Daniel Butler's suretyship was not made known to the payee.

The case of *Moore* v. *Goodwin*, 109 N. C., 218, simply holds that payment made by a principal upon a bond before the cause of action thereon is barred as to the sureties arrests the operation of the statute. There were in that case no indorsers, and the use of the word "indorsers" in connection with sureties, in the opinion, was unnecessary, and could not be an authority for the position that there is a community of interest between the sureties and indorsers by virtue of section 50 of *The Code*.

The decisions of the Court in this State are not in accord with those of many other States upon the effect of payment or acknowledgment by one co-obligor, joint maker or surety upon the others. While we have no disposition to unsettle the law as firmly established in North Carolina, we do not wish to widen the breach and extend the power of one party to a note to bind another by payments in respect to the statute of limitations. We think there is

Error.