W. G. B. GARRETT v. A. J. REEVES and T. L. FRANCIS *et al.*

(Decided December 22, 1899.)

*Promissory Note—Payments by Maker—Endorser—Surety —Act 1827, The Code, Sec. 50—Statute of Limitations.*

1. A payment by the principal on a note, before the bar of the statute, operates as a renewal as to himself, the sureties and endorsers.

2. The Act of 1827, Code. sec. 50, renders an endorser liable as surety.

3. Where the payee, before maturity, endorses and transfers the note, and the maker makes successive payments, the first before the bar of the statute as to the endorser, and each succeeding one within three years of the preceding one, the liability of the endorser, as well as that of the maker, is renewed at each payment.

4. A payment made by the maker, after the bar of the statute, operates as a renewal as to himself only.

CIVIL ACTION upon a promissory note against the makers and endorser, tried before *Coble, J.,* at Fall Term, 1899, of the Superior Court of HAYWOOD County.

The note was payable twelve months after date, March 20, 1886, to defendant Francis, and before maturity was endorsed and assigned to another, who transferred it by endorsement to the plaintiff. A number of payments were made upon it by A. J. Reeves, the principal maker, beginning with April 21, 1887, and ending December 23, 1896. Three years had not elapsed between any two successive payments. This suit was commenced September 12, 1898. No defense was made to the action, except by Francis, who pleaded the statute of limitations. His Honor held that the action was barred as to him. Verdict and judgment accordingly. Plaintiff excepted and appealed.

125——34

*Messrs. Smith & Valentine,* and *Moody & Welch,* for appellant.

*Messrs. W. T. Crawford,* and *G. S. Ferguson,* for appellee.

FURCHES, J.    On the 20th day of March, 1886, A. J. Reeves, Mrs. L. McD. Reeves, K. Reeves, and W. T. Reeves, made and executed their promissory note under seal to the defendant T. L. Francis (therein called Leroy Francis), for the sum of $650, due 12 months after date.    Soon after the execution of the note, Francis, for valuable consideration, sold the same to J. P. Herren, and endorsed it in blank by writing his name across the back of it, and Herren sold and transferred the note to the plaintiff, and endorsed it in the same way that Francis endorsed it to him.    Various payments have been made on said note by the defendant A. J. Reeves, who seems to have been the principal therein, to the plaintiff, Garrett.    These payments have been made at different times, commencing within less than three years from the date of the note; and this first payment was followed by other payments, so as not to make as much as three years intervene between the date of any two of the payments. None of the defendants file any answer or make any other defense to the plaintiff's action, except the defendant Francis.    He filed an answer in which he admits that the note was given to him by his co-defendant Reeves; that he sold and assigned the same to Herren, and endorsed the same in blank by writing his name on the back of the note, and pleads the statute of limitations.

The sole question involved is: Did these endorsed payments arrest the operation of the statute of limitations, and prevent it from becoming a bar to the plaintiff's action, as against the defendant Francis?    The Court held that they did not.

It is not contended but what these payments prevented the

statute from becoming a bar to the plaintiff's action, as against A. J. Reeves the principal, and party making the payments. And it is held in *Green v. Greensboro College,* 83 N. C., 449, cited and approved in *LeDuc v. Butler,* 112 N. C., 458, and in quite a number of other cases, that a payment made by the principal, before the action is barred, operates as a renewal as to all the obligors—sureties as well as principals. This now seems to be the settled law in this State.

But the defendant Francis says that he is not a surety, but an endorser, and, for this reason the doctrine announced in *Green v. Greensboro College, supra,* does not apply to him; that the payments made by the principal debtor, Reeves, did not affect him, and that he stands on the same footing as if no such payments had been made; and that the statute barred any action against him after the lapse of three years from the time the note fell due.

This would certainly have been so, before the statute of 1827 (Code, sec. 50). And it is now to be considered what effect this statute has upon the case, if any.

This statute provides that: "Whenever any bill or negotiable bond or promissory note shall be endorsed, such endorsement, unless it be otherwise plainly expressed therein, shall render the endorser liable as surety to any holder of such bill, bond or promissory note, and no demand on the maker shall be necessary, previous to an action against the endorser: *Provided,* that nothing herein shall in any respect apply to bills of exchange, inland or foreign."

If this statute is construed to mean what it plainly says, "that any such endorser shall be liable as *surety to any holder*" of the endorsed note, it would seem that the doctrine of *Green v. Greensboro College, supra,* applies, and that the statute of limitations does not bar the plaintiff's action against the defendant Francis. The plaintiff is the *holder*

of the note, and the defendant Francis is the *endorser* of the note.    This doctrine that an *endorser* becomes a *surety* to the holder of the note, seems to be expressly held in *Johnson v. Hooker*, 47 N. C., 29, where the Court, PEARSON, J., delivering the opinion, says: "The Act of 1827, Revised Statutes, chap. 13, sec. 10, (now Code, sec. 50), makes an *endorser liable to the holder of a note as surety. The effect is to put him on the footing of a maker of the note, and to make him liable to the holder, the same as if his name was on the face of the note instead of being on the back."* If this opinion, which seems to be fully authorized by the language of the statute, is to be considered a correct construction of the statute of 1827 (Code, sec. 50), it would seem that the defendant Francis stands in the same relation to the plaintiff as if he were one of the original makers of the note.

In *Bank v. Lumber Co.*, 123 N. C., 20, and in *Moore v. Carr, Ibid,* 425, it is held that an endorser is a surety on the note to the holder.    And in *Moore v. Carr* it is held that payments made by the principal debtor arrest the operation of the statute of limitations as to the endorser; but, in that case, the endorsement was made before the note was delivered to the payee.    And it is contended that this fact distinguishes that from this case.    The distinction is attempted to be drawn upon the ground that, in that case, there was "a community of interest between the defendants;" while, in this case, there is no community of interests between the defendant Francis and the original maker of the note; that by reason of this "community of interest" any payment made by the principal debtor tended to discharge the debt, and inured to the benefit of the endorser.    This idea is advanced, and the same language and argument used, in some other cases, discussing the effect of the Act of 1827.    But we do not know what is meant by a "community of interest" unless it means

that they were all interested in having the debt paid. This is what we would take it to mean. It can not mean that their interests were equal. If it is given this meaning, it would exclude sureties from the effect of a payment made by the principal debtor, and this would destroy the doctrine held in *Green v. Greensboro College, supra,* and the other cases where the same doctrine is held. But this community of interest, in cases of principal and surety and in cases of principal and endorser before the note is delivered to the payee, must be a "community of interest" in the sense or meaning we have given this language. For their interests are not equal, nor "of the class" any more than that of the defendant Francis. Every surety on a note is interested in the principal's paying the note, because that discharges him from liability. But the surety and principal debtor are not only not equally interested, but they are not "in the same class" of liability. If the surety pays the debt, he has recourse on the principal debtor. But if the principal pays the debt, he has no recourse on the surety. And to hold that this inequality destroys the "community of interest" would be in effect to overrule *Moore v. Carr,* and to destroy the doctrine of *Green v. Greensboro College.* If the endorser pays—that is, if Francis pays—he has recourse on all the original makers of the note; but they would have none upon him. It is admitted that the statute of 1827 (Code, sec. 50), does not affect the liability, as between makers and endorsers. It does not claim to do this, but to make the endorser a surety to the holder of the note. This is what we think must be understood by the term "community of interest"—that the endorser is bound as *surety,* and is interested, in common with the other parties, in the principal debtor's paying the debt.

The case of *Wood v. Barber,* 90 N. C., 76, was cited and relied on by the defendant. But when we come to examine

that case, we find that it was an action on a partnership debt, out of date, when one of the partners made a payment, after it was barred; and it was claimed by the plaintiff that this payment revived the debt as to all the partners. But the Court held that under sec. 171 of The Code, the payment did not have the effect to revive the debt as to any of the partners, except the one making the payment. So it is seen that that case does not bear upon the question under discussion in this case.

The case of *LeDuc v. Butler,* 112 N. C., 458, was cited and relied on by the defendant Francis; and there is a discussion of the liability of endorsers, and the effect of a payment to an *endorsee* by the *payee* who had endorsed the note. But it does not seem that the question was presented as to what effect a payment made by the principal debtor would have upon the running of the statute of limitation, upon an endorser, as the defendant Butler, who pleaded the statute of limitations in that case, was one of the *original* signers and *makers* of the note sued on. It is true that there are expressions used by the learned Judge who wrote the opinion that are favorable to the contention of the defendant. But as they were not presented by the facts of the case, they do not have the character and force of a precedent. It is admitted in this discussion of that case that *Johnson v. Hooker, supra,* is authority against the position taken by the defendant in this case. It is also said in the discussion of that case (*LeDuc v. Butler*): "A clear distinction is marked in all these cases, except possibly the last, between the surety and the endorser in their relations to each other, while, as to the holder, their liability was the same." This is what we contend for in this case—that, "as between the endorser and the holder," that is, as between the plaintiff, the holder, and the defendant Francis, the endorser, the relation between

them is the same as if the defendant Francis had been one of the original sureties.

A review of the cases will show that the opinions of the Court have not always been in harmony upon this question. But the most direct expression of the Court that we have seen is the case of *Johnson v. Hooker,* and that is with the plaintiff.

It seems to us that at least some of the cases cited for the defendant are based on *Good v. Martin,* 95 U. S., 90, cited in *Hoffman v. Moore,* 83 N. C., 313, which is put upon the general doctrine of commercial law, in which our statute of 1827 was not (as a matter of course) taken into consideration. And this Court in some of its discussions of this question, we are inclined to think, have not given that consideration to the statute of 1827 that it was entitled to.

We are unable to see how the statute (Code, sec. 50), when construed in the light of the doctrine of *Green v. Greensboro College, supra,* can be held to relieve the defendant Francis from liability in this action.

This opinion does not conflict with *Moore v. Carr,* or *Bank v. Lumber Co., supra.* It only makes an application of sec. 50 of The Code, not involved in either of these cases.

There is error. New trial.

FAIRCLOTH, C. J., dissenting. The question in this case is presented by the second issue: "Is the plaintiff's right of action barred by the statute of limitations as to the defendant T. L. Francis?" The jury answered, "Yes," under the instruction of the Court.

Stripped of unnecessary words, the following are the facts stated in the case, and the record: On the 26th of March, 1886, A. J. Reeves and L. D. McD. Reeves, as principals, and K. Reeves and W. T. Reeves, as sureties, executed and delivered their note under seal, payable to T. L. Francis 12

months after date, for value received. After the note was
delivered and before it became due, the payee endorsed said
note for value to defendant Herren, who endorsed it to the
plaintiff. Several payments were made by the maker, A. J.
Reeves, the last payment being made on December 23, 1896.
No payment was made except by the principal maker, A. J.
Reeves. This action was commenced on September 12, 1898.
It is conceded that plaintiff's right of action is barred as to
defendant Francis by the lapse of time, unless the payment
made by the maker, after the bar was complete, restores and
revives the liability of Francis, the payee and endorser for
value. The majority of the Court hold that said payment
had that effect. The question turns upon the proper con-
struction of the Act of 1827, chap. 2, Code 50, which reads
as follows: "Whenever any bill or negotiable bond or prom-
issory note shall be endorsed, such endorsement, unless it be
otherwise plainly expressed therein, shall render the endorser
liable as surety to any holder of such bill, bond or promis-
sory note; and no demand on the maker shall be necessary
previous to an action against the endorser." Upon the
present and all similar state of facts my contention is:

1. That since the passage of said act, the original obligors,
the accomodation endorser or endorsers, and the payee
endorser and subsequent endorsers are all sureties to the final
endorsee, and that he may sue any one of them without alleg-
ing demand on any other one.

2. That whilst the above is true, the Act of 1827 goes no
further, and does not affect the relations and rights of the
parties *inter se,* but leaves them to be worked out as they were
prior to the passage of the act.

These propositions I gather from the authorities and from
my reading of the statute. The principal debtor delivers his
note for value received and his sureties stand for him. The

GARRETT v. REEVES.

endorsement before the note is delivered is without consideration, and is intended to strengthen the security for the accomodation of the maker of the note. These, as to the payee, constitute one class of joint debtors, with all the rights of contribution, etc., among those who have a community of interest.

The endorsement by the payee is for a consideration, the sale of his property, and the Act of 1827 makes him liable as surety, unless he guards himself in some way, such as *without* *recourse* or the like, and he and subsequent endorsers, (all sureties to the final endorsee) constitute a different class of debtors, with no common interest whatever with the original maker of the note. They are only supplemental sureties. Before the act, the holder had much difficulty in collecting from endorsers, guarantors, etc. It devolved upon him to show diligence, demand before suit, presentation at the specified time and place, etc., and it often resulted in the loss of his claim. I think the Legislature intended to save the holder from such risks, and did not intend to allow the maker, who alone has received benefit, by his own *act* to impose on the (payee) endorser a liability, against which he was protected by a statute of limitations. The construction of the Act of 1827 was a serious question with this Court soon after its passage, and its construction has been followed until now.

It is a plain principle that those who have engaged in a common hazard should share in the loss consequent upon it, and on this principle is founded the obligation of contribution among co-sureties. But I do not think that the Act of 1827 establishes the order of their liabilities as arranged among themselves. Those liabilities are to be determined by rules independent of, and in force prior to, the act.

In *Williams v. Irwin,* 20 N. C., 74, it was held that since

the Act of 1827, the endorsee could maintain an action against the endorser without averring or proving any demand on the maker. In the opinion, RUFFIN, C. J., turns his attention to the language of the act under consideration: "The expression, 'liable as surety,' has no definite legal sense, nor any established signification in common parlance. Whenever one person is liable for the debt of another, by whatever means, or in whatever form the liability is created, the person is in law a surety; and, perhaps, in popular language, is said to be *liable as surety* for the other. But the extent of the liability, its nature, whether immediate or remote, positive or conditional, legally depends upon the terms and nature of the engagement. It may be by recognizance, by bail-bond, obligation note, guaranty, endorsement and otherwise, in the same or a separate instrument. But 'liable as surety' is not the phraseology of the law; and in either of those cases the surety is said to be liable for the debt as cognizor, obligor, maker or endorser. It is therefore hazarding something to change the responsibility of an endorser upon language so vague and unsatisfactory." He then enumerates the difficulties in collecting from an endorser before the statute, and says: "Perhaps those were all that were in the contemplation of the Legislature. * * * This will be carrying the act far enough for all the purposes of justice. * * * And the holder can lose his money only by such delay as will bar him by force of the statute of limitations."

The next case was *Ingersoll v. Long*, 20 N. C., 295, which approves the last case cited, and GASTON, J., remarked on the Act of 1827: "That the object of the act in declaring the endorser liable as surety was not to bind him as though he had signed the note with the maker as surety—not to make him liable to the endorsee if the endorsement were made without consideration—nor to deprive him of the protection which the acts of limitation had extended to endorsers."

In *Topping v. Blount,* 33 N. C., 62, it was held "that the contracts of the obligor and the endorser are in their nature several, and no act of the former can change the latter. The Act of 1827, indeed, says the endorser shall be liable as surety to the holder; * * * but it has been for sometime settled that the sole purpose of that act was to turn the implied conditional contract, between the endorser and holder, into an unconditional one; and that it was not intended to charge the endorser, as if he had executed the bond as co-obligor, or upon an endorsement without consideration, or to deprive him of the benefit of the statute of limitations, by exposing him to stale demands, kept alive, perhaps, by collusion between the obligor and the holder."

I have freely quoted from the above cases to show that the endorsers in the present case constitute one *class* of debtors and that the original obligors constitute another *class,* separate and distinct from the first, and that there is no community of interest between the two classes, although they are all conditionally liable to the endorsee by force of the Act of 1827.

I must admit that I have found no case on *all fours* with the present, i. e., where the facts are the same, but all the expressions of the Court for 60 years, as to the meaning of the act, are uniform in support of my position.

If this is true, can the act of one member of one *class* impose a liability on a member of another *class,* or deprive him of his protection by the lapse of time after the statute of limitations has run long enough to bar the plaintiff's right of action? I think not.

Where a payment is made upon a claim, before it is barred by the lapse of time, by one of several obligors of the same class, it becomes the legal act of all, and arrests the operation of the statute as to them, but does not revive the liability of

others of a different class.    The rule that payment by one of the same class binds all of that class is founded upon the community of interest among those of that class.    *Wood v. Barbour,* 90 N. C., 76; 2 Greenleaf Ev., sec. 444.    Where one surety makes a payment on a note after the bar of the statute has arisen, it does not revive the debt against the co-sureties.    *Long v. Miller,* 93 N. C., 227 ; *Green v. Greensboro College,* 83 N. C., 449.    "Part payment of a note by the payee who had endorsed it will not repel the bar of the statute of limitations as against the maker, the statute, Code sec. 171, confining the act, admission or acknowledgment as evidence to repel the bar to the associated partners, obligors and makers of a note."    *LeDuc v. Butler,* 112 N. C., 458. This principle is recognized and distinguished in *Harper v. Edwards,* 115 N. C., 248.

This case rests upon The Code, sec. 171, and is equally applicable to a copartnership or makers of a note.    It also draws the distinction as to different classes, and the absence of a community of interest and the consequences, as I have already stated.

If then, the endorser in one class, by his act, can not deprive the maker of his statutory protection against the holder, on what principle can the maker, by his act, deprive the endorser for value of his protection ?    Common reasoning is against the proposition.

I can not agree or admit that *Johnson v. Hooker,* 47 N. C., 29, is an authority against the defendant, but quite the contrary.    That was an action by the holder against an *accommodation endorser* without consideration, for the benefit of the maker, and before the note was discounted or delivered to the holder.    Of course, the language quoted from Judge Pearson referred to the endorser, who was the defendant, and whose liability was being considered.    That is my argument, that

such an endorser does not belong to the same *class* as a payee who endorses for a valuable consideration and becomes thereby a surety to the holder, by force of the statute of 1827.

For these reasons I think his Honor's instruction to the jury on the second issue was right, and that his judgment should be affirmed.