FIRST NATIONAL BANK OF OXFORD v. CLAUD KING ET AL.

(Filed 10 December, 1913.)

**Bills and Notes—Sale of Collaterals—Credits—Payments—Limitation of Actions.**

K. executed his note to plaintiff bank and assigned certain collateral to H., cashier, to secure the same, with power to H. to sell, and as K.'s agent to apply the proceeds to payment of note, with specific agreement by K. to pay any deficiency. H. sold the

BANK v. KING.

collateral and so applied proceeds: *Held*, that the statute of limitations was repelled and that K. was liable for the deficiency.

CLARK, C. J., dissents; HOKE, J., concurs in dissent.

APPEAL by defendants from *Connor, J.*, at August Term, 1913, of GRANVILLE.

Civil action, tried upon these issues:

1. Did the defendants execute the note, as alleged, and make the payments down to April, 1907, as alleged? Answer: Yes.

2. Did the plaintiff sell the stock for $1,500, and apply the proceeds thereof on the note, as alleged in the pleadings, on 25 February, 1913? Answer: Yes.

3. Is the plaintiff's cause of action barred by the statute of limitations? Answer: No.

4. Are the defendants indebted to the plaintiffs, as alleged; if so, in what sum? Answer: $1,036.36, with interest on $1,005.58 from 2 May, 1913.

The defendants excepted to the charge of the court upon the third issue, and appealed.

*Hicks & Stem, T. T. Hicks for plaintiff.*
*John W. Hester, D. G. Brummitt for defendant.*

BROWN, J. The part of the charge excepted to is as follows: "Inasmuch as the note contains a provision authorizing the plaintiff bank, its president or cashier, to sell the stock mentioned in the note of 18 July, 1906, and apply the proceeds of such sale to the note, the court holds and charges you that in making the sale of the twenty shares of stock of the King Buggy Company, mentioned in the note sued on, to E. H. Crenshaw, on 25 February, 1913, W. H. Hunt, cashier of plaintiff bank, was acting as the agent of defendants, and the application of the proceeds of such sale on said date by plaintiff bank to said note was such a voluntary payment as revived the debt and created a new promise or obligation upon the part of defendants to pay said note. Thereupon the court charges you, if you find the facts to be as testified to in the evidence, to answer the third issue 'No.'"

The uncontradicted evidence proves that the defendants executed their obligation to plaintiff, of which the following is a copy:

$2,000.00.　　　　　　OXFORD, N. C., 18 July, 1906.

On 1 September, 1906, after date, for value received, we promise to pay to the First National Bank of Oxford, N. C., or order, $2,000, negotiable and payable at said bank, with interest at the rate of 6 per cent per annum after maturity, having deposited with said bank as collateral security for payment of this or any other liability or liabilities of ours to said bank, due or which may be hereafter contracted, the following property, viz.:

Certificate No. 15, twenty shares King Buggy Company stock attached as collateral. It is hereby understood and agreed that we are to pay $75 per month on this note until paid in full, with such additional collaterals as may from time to time be required by the president or cashier of the First National Bank of Oxford, N. C., and which additional collaterals I hereby promise to give at any time on demand, and if not so given when demanded, then this note to become due and payable at once, with full power and authority to said bank to sell, assign, and deliver the whole or any part thereof, or any substitutes therefor, or any additions thereto, at any broker's board, or at public or private sale, at the option of said bank, or its president or cashier, or its or their or either of their assigns, on the nonperformance of this promise, or the nonpayment of any of the liabilities above mentioned, or at any time or times thereafter, without advertisement or notice, which are hereby expressly waived; and upon such sale the holder hereof may purchase the whole or any part of such securities, discharged from any right of redemption; and by these presents we do hereby constitute and appoint W. H. Hunt, cashier, and his successors in office, our true and lawful attorney, for us and in our name and behalf, to assign and transfer said securities to the purchasers thereof, and after deducting all legal or other costs and expenses for collection, sale, and delivery, to apply the residue

164—20

of the proceeds of such sale or sales so to be made to pay any, either, or all of said liabilities to said bank, or its assigns, as its president or cashier, or its or their or either of their assigns, shall deem proper, returning the overplus, if any, to the undersigned. And the undersigned agree to be and remain liable to the holder hereof for any deficiency.

CLAUD KING,
MOSES A. KING,
JESSE KING.

The defendants afterwards made the following payments on said note, to wit: 6 August, 1906, $60; 1 September, 1906, $30; 12 October, 1906, $70; 23 April, 1907, $15; and 25 February, 1913, from sale then made of the stock deposited as aforesaid, $1,500.

There is a conflict of authority on the question of the effect of applying the proceeds of collaterals left with the creditor by the debtor as part payment of the debt. In some jurisdictions it is regarded as sufficient to interrupt the statute, provided the collaterals are realized on within a reasonable time. This is the rule laid down in Maine, Massachusetts, Nebraska, New Jersey, and Vermont.

In others it is ineffectual to stop the bar of the statute in the absence of evidence of notice to or assent by the debtor. This is held in Alabama, New York, and Minnesota. 25 Cyc., page 1379 and notes.

The author of Cyc. says: "If the debtor constitutes a *third person* his agent to hold, and, in case of default, to realize on collateral and apply the proceeds to his debt, payment of such proceeds by such agent will interrupt the statute." 25 Cyc., page 1379 and notes.

This distinction is based upon the idea that when the debtor's duly constituted agent makes the sale of the collateral and applies the proceeds to the payment of the note, it is the debtor's own act.

This principle seems to be supported by all the authorities. In the case before us the defendants not only appointed Hunt

as their agent to hold the collateral, sell it and apply the proceeds to the payment of the note, but they specially bound themselves to pay any deficiency remaining after such application.

The words, "and the undersigned agree to be and remain liable to the holder hereof for any deficiency," constitute a contract to pay such deficiency when ascertained, and that could not be ascertained until the defendants' agent sold the collateral and applied the net proceeds to the note.

No error.

CLARK, C. J., dissenting: Revisal, 371, provides: "No acknowledgment or promise shall be received as evidence of a new or continuing contract from which the statutes of limitations shall run unless the same be contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest." It is evident from this that such payment shall be made under circumstances which shall be equivalent to a new promise in writing, i. e., it must be a voluntary payment by a party who at the time is free to make his election and who by the payment intends to expressly recognize the debt as existing. A sale under a previous authorization to an agent or trustee to sell collaterals and apply the proceeds on the debt can no more have the effect of a voluntary new promise than the agreement itself in the face of the note or bond to pay it. The payment must not only be made in recognition of debt, but there must be an agreement to pay the balance. *Battle v. Battle*, 116 N. C., 161; *Supply Co. v. Dowd*, 146 N. C., 196.

In this case the sale of the collaterals by the trustee and the payment were made after the debt was barred. A payment is a renewal of the debt as to the principal (*Garrett v. Reeves*, 125 N. C., 529), but not as to partners after partnership dissolved (*Wood v. Barbour*, 90 N. C., 79); nor as to indorsers (*Garrett v. Reeves, supra*). It follows, therefore, that it cannot be construed as a voluntary payment constituting a new promise by the debtor where the trustee makes the sale under authority given seven years prior thereto to sell the collaterals.

When such authority was conferred, the debtor was bound for any deficiency, because he was not yet protected by the statute. When the sale was made, and the proceeds were applied, this was valid as a sale and a payment, but no inference of a new promise could be drawn therefrom, the debt having become barred.

In *Battle v. Battle,* 116 N. C., 164, it is said: · "Partial payment is allowed this effect only when it is made under such circumstances as will warrant a clear inference that the debtor recognizes the debt then existing and his willingness, or at least his obligation, to pay the balance," citing *Hewlett v. Schenck,* 82 N. C., 234. This is reaffirmed and amplified by *Mr. Justice Walker* in *Supply Co. v. Dowd,* 146 N. C., 196. A new promise cannot be implied except when the payment is made with the consent of the debtor—not theretofore authorized merely, but given at the time. "The principle is that by the part payment the party paying intended thereby to acknowledge and admit the greater debt to be due, and upon this the inference may be drawn of a promise to pay the balance, or the payment by its own vigor revives the debt." 25 Cyc., 1369; 19 A. and E., 326-328.

The doctrine is best and most clearly stated by *Rapallo, J.,* in *Harper v. Fairley,* 53 N. Y., 422, in a case almost identical with that now before the Court. He said: "That a part payment, whether made before or after the debt was barred by the statute, does not revive the contract, unless made by the debtor himself, or by *some one having authority to make a new promise on his behalf, for the residue.*" The bank, as trustee here for itself, did not have the authority to make to itself a new promise for the debtor to pay the debt. The authority given it was no more than to sell the stock and apply the proceeds.

There must be a conscious, voluntary, intentional act upon the part of the debtor, contemporaneous with the payment, before the implication of a new promise will arise. Not every payment, if made even by the debtor himself, will have the effect of reviving the debt, because such payment may be made as a compromise and settlement, as in *Supply Co. v. Dowd,* 146 N. C.,

193. The intention to pay the balance in such case would be lacking, and no new promise could be implied. *U. S. v. Wilder,* 13 Wall., 254. In this case the authority given seven years before to sell the collaterals and apply the proceeds cannot be .construed as equivalent to a new promise in 1913 to pay the balance of the debt when the sale did not take place till that time.

"Where a debtor owes two notes to the same creditor, one of which is barred and the other is not, and a payment is made without any direction as to which note it shall be applied, the creditor may apply it upon the barred debt, but such application does not revive the debt nor imply a new promise. No inference of such intention to pay the balance can be drawn from the act and no new promise will arise." *McBride v. Noble,* 40 Col., 372; *Ramsey v. Warner,* 97 Mass., 8, and cases cited in notes to *U. S. v. Wilder,* 20 U. S. (Law Ed.), 681.

. No *ex parte* action on the part of the creditor is sufficient, but the payment must be made either by the creditor voluntarily or by some one clothed with authority, not only to make the payment, but to make it as a new promise in his behalf. The creditor cannot credit upon the note a debt owing by him to the debtor and .thus revive the debt. *Bank v. Harris,* 90 N. C., 118.

This Court has held that the payment by a trustee, who is selected as a disinterested party, at the time the debt is contracted, to hold the legal title, will not operate to revive the debt or toll the statute. *Battle v. Battle, supra.* In *Cone v. Hyatt,* 132 N. C., 810, the true rule is laid down: "The reason why a part payment is allowed to prevent the bar of the statute is that it is deemed an admission of a subsisting liability from which a promise, as of the date of the payment, to pay the balance of the debt will be implied. But in order to raise this implication there must be a *voluntary* payment by the debtor or by some one authorized to make the payment for him." The sale of collaterals and application of proceeds under authority given seven years prior thereto cannot be considered a voluntary payment that will raise the implication of a new promise. .

This debt became barred on 24 April, 1910. The authority to sell the collaterals upon default was given when the note was

executed and the collaterals deposited 18 July, 1906. The sale of the collaterals was not made till February, 1913. Whether such sale and application would be valid after the debt was barred is a matter about which the decisions differ, but none go so far as to say that such act will *revive* the debt. 25 Cyc., 1379.

In 1 Wood Statute of Limitations (2 Ed.), 282, it is said that a part payment derived from collateral security and its application to the debt without the debtor's assent at the time does not remove the bar, citing *Harper v. Fairley,* 53 N. Y., 442; *Brown v. Latham,* 58 N. H., 30, and other cases.

In *Jones v. Langhorne,* 19 Col., 206, it is held: "A new promise to pay a debt barred by the statute of limitations will not be implied from part payment where the circumstances of the payment rebut the inference of such promise; and where the part payment is money realized from assets transferred by the debtor to the creditor, the new promise is not to be implied as of a later date than the transfer." This date in this case was July, 1906.

Again in *Good v. Ehrlich,* 72 Pacific, 544, it is held that "to revive a debt there must be a voluntary payment, and collection from collaterals cannot have this effect, but such collection must be referred back to the date of the deposit of the collaterals."

The strongest case probably is *Ferris v. Curtis,* 127 Pacific, 236 (decided 7 October, 1912), where it is said (p. 238): "It has also been repeatedly held in this Court that the efficiency of the payment to avert the effect of the statute as a bar rests in the conscious and voluntary act of the defendant when explainable only as a recognition and confession of the existing liability. To raise such implied promise it must be voluntarily made by the debtor to the creditor. It must be shown to be a payment of a portion of an admitted debt paid to and accepted by the creditor as such, accompanied by circumstances amounting to an absolute, unqualified acknowledgment of more being due, from which a promise must be inferred to pay the remainder." The Court then held that, in this aspect, the sale of col-

laterals under a prior authority, to be applied to the debt, while an authorized, is not a *voluntary,* but an involuntary sale, from which no new promise can be implied.

In *Bank v. Barnaby,* 197 N. Y., 210, the paper and authority were identical with those in this case, and the Court, reviewing all the authorities, held: "Few lawyers will have the courage to argue that under a general authority to sell securities and apply the proceeds a pledgee will have power to revive a debt against his pledgor already barred by the statute."

A part payment to bar the statute and revive the debt must be made with the intention of making a new promise and acknowledging the debt. The above authorities hold that such intention cannot be implied from the sale of collaterals and their application under authority given prior thereto, and most especially this could not be the effect when the debt in the meantime has become barred. There was no express evidence offered in this case of such intention, and if there had been, it should have been submitted to the jury. 25 Cyc., 1369, and notes.

HOKE, J., concurs in this dissent.