MRS. K. E. EDWARDS v. JEFFERSON STANDARD LIFE INSURANCE
COMPANY ET ALS.

(Filed 26 May, 1917.)

1. **Contracts, Interpretation—Intent.**

In construing a written contract, technical rules give place to the intention of the parties gathered from the language used, arrived at by transposing sentences when necessary and disregarding words without distinct meaning; and where two conflicting constructions may be reached, the one upholding the validity of the contract will be adopted; and in case of ambiguity, the words employed are taken most strongly against the party using them, and the facts existing at the time may be used as a "key" to the meaning of the contract.

2. **Same—Insurance—Assignments.**

An assignment of an annuity policy for the security of a debt, payable to the wife, should she survive her husband, or to the latter, the insured, should he survive his wife, reading, "I, W. J. E. and K. E. E., do hereby assign," etc. . . . "The object and extent of this assignment is to secure the said assignee against any and all indebtedness that I may be owing to him or his estate at my death": *Held,* the use of the expressions, "I may owe," "at my death," would indicate that the debt was that of both the assignors; but the fact that the husband was a railroad promoter and was and continued to be indebted to the assignee, and the wife never was, when considered, will affect the interpretation of the instrument, so that the intent thereof will be ascertained as securing the obligation of the husband only.

3. **Equity—Contribution—Bills and Notes—Principal and Surety—Endorsers.**

The equitable doctrine of contribution rests upon the maxim that equality is equity, and is enforced upon the principle that those engaged in a common hazard in the same degree or relation should bear the loss

equally; and where one is surety on a note and the others indorsers thereon, the liability of the former is primary and of the latter a conditional one, being entitled to notice of dishonor; and not being in the same situation with regard to the hazard, the surety is not entitled to contribution from the indorsers.

### 4. Same—Husband and Wife.

Where a wife has assigned her beneficial interest in an annuity policy on the life of her husband as security to a note given by him, with indorsements thereon, she does not assume the obligations and liabilities of an ordinary surety, and no personal judgment can be obtained against her; but only the property assigned will be regarded as the surety for the payment of the obligation, and to the extent it is so used her husband becomes her creditor.

CIVIL ACTION, tried before *Cox, J.,* at April Term, 1917, of LEE.

This is an action to have the plaintiff declared entitled to an annuity of $500 and to recover a part of the same alleged to be due.

On 13 January, 1903, the Security Life and Annuity Company issued its policy on the life of W. J. Edwards, providing for the payment of an annuity to the plaintiff, his wife, if she survived him, and an annuity to him if he survived his wife, and the defendant insurance company has assumed payment thereof.

On 19 January, 1915, the plaintiff and her said husband executed an assignment of said policy to the defendant bank which was assented to by the insurance company, as follows:

"For the purpose of securing any indebtedness that I may owe the assignee hereinafter mentioned, or his estate, at my death, I, W. J. Edwards and K. E. Edwards . . . do hereby assign, transfer, and set over to the Farmers Commercial Bank of Benson (describing policy) . . . and all dividends, benefits, and advantages to be had or derived therefrom. . . . The object and extent of this assignment is·to secure the said assignee against any and all indebtedness that I may be owing to him or his estate at my death.

[Here follows a power of attorney to collect.]

(Signed)    W. J. EDWARDS [SEAL.]
K. E. EDWARDS [SEAL.]

The said Edwards died insolvent in April, 1916, and at the time of his death was indebted to said bank in the amounts set out in the judgment rendered, a part of the debts being contracted before and a part after the execution of the assignment, said indebtedness being evidenced by notes on which there were endorsers.

The insurance company has admitted its liability, but asks the judgment of the court determining who is entitled to the fund.

Judgment was entered in favor of the bank, directing the insurance company to pay all amounts due under the policy to the bank until its indebtedness is paid in full, and the plaintiff excepted and appealed, contending that the assignment to the bank is so vague and ambiguous that it cannot be enforced, and, if not, that she is entitled to a contribution from the indorsers.

*Hoyle & Hoyle for plaintiff.*
*Clifford & Twnsend for defendant.*

ALLEN, J. In the construction of contracts "technical rules are not so regarded as the real meaning of the parties, where it can be gathered from the instrument itself; and to arrive at the intention, sentences may be transposed and insensible words, or such as have no distinct meaning, may be disregarded." (*Killian v. Harshaw*, 29 N. C., 498; McIntosh on Contracts, (2 Ed.), 553), and of two construcions, that will be adopted which upholds the instrument, as it is presumed "when parties make an instrument the intention is that it shall be effectual and not nugatory." *Hunter v. Anthony*, 53 N. C., 385.

Words are to be taken most strongly against the party using them, and facts existing at the time of making a contract may be used as a "key to its meaning." *Richards v. Schlegelmich*, 65 N. C., 152.

Applying these rules of construction, there is little difficulty in arriving at the intention of the parties.

The assignment says distinctly that it is executed for the purpose of securing any indebtedness to the bank existing at the death of the debtor, and the debtor must be both of those who executed the assignment, or one of them.

There is good reason for holding that it was intended to secure the indebtedness of both, rather than let it fail altogether, because, while the expressions "I may owe," "at my death" are used, the assignors also use the singular pronoun to include both of the makers of the assignment. They say, "I, W. J. Edwards and K. E. Edwards."

When, however we consider the circumstances surrounding the execution of the assignment, that W. J. Edwards is described in the policy as the insured and the plaintiff as beneficiary, that W. J. Edwards was a railroad promoter and borrowing money and his wife not, and that he was indebted to the bank when the assignment was made and at his death, and that his wife owed nothing, it is reasonably certain that it was the purpose of the parties to secure the indebtedness of the husband, W. J. Edwards, and we so hold.

Nor do we think the plaintiff, one of the makers of the assignment, is entitled to contribution as against the indorsers on the notes, as this equity only arises between persons standing in the same situation. *Moore v. Moore,* 11 N. C., 358.

The right to contribution results from the maxim that equality is equity, and is enforced upon the principle that those engaged in a common hazard should bear equally any loss. *Dawson v. Pettway,* 20 N. C., 351.

It exists between cosureties, who are bound to a common liability, and if there is no common liability there is no foundation for the equity. Brandt Guaranty and Suretyship, secs. 221-224; Eaton on Equity, 508-9.

As said in *Moore v. Moore,* 11 N. C., 360, it is "a principle of natural equity that equality is equity among persons standing in the same situation."

If common liability, common hazard, and similarity or identity of situation is the foundation of the equity, it follows that the plaintiff, admitting that she is a surety, is not entitled to contribution as against the defendants, indorsers upon the notes.

A surety is a maker, is primarily liable for the payment of the debt, and is not entitled to notice of dishonor (*Rouse v. Wooten,* 140 N. C., 557), while the indorser is liable conditionally, and does not undertake to pay absolutely, but only after notice of dishonor (*Sykes v. Everett,* 167 N. C., 608), and is entitled to notice of dishonor. *Perry v. Taylor,* 148 N. C., 362.

The surety and the indorser are not in the same situation, nor is there a liability or hazard common to both.

A case directly in point is *Smith v. Smith,* 16 N. C., 173, in which the headnote, fully sustained by the opinion, is as follows:

"Where A., as surety, signed the note of B., payable to C., and it was indorsed by C. at the request and for the accommodation of B., there being no contract between A. and C. whereby they agree to become cosureties of B., it was held that A. had no right to contribution from C."

Again, the Court says in *Le Duc v. Butler,* 112 N. C., 461, which is affirmed in *Hauser v. Fayssoux,* 168 N. C., 1: "A clear distinction is marked in all of these cases, except possibly the last, between the surety and the indorser in their relation to each other. While to the holder their liability was the same, as to each other they were essentially different. If the indorser should pay the note he might still erase the indorsement and sue the surety and maker or the joint makers upon the note. If, however, the surety should pay the note, he could not call upon the indorser as a cosurety for contribution, but his payment operated as a discharge of the the indorser from all liability, although by force of the statute he was liable as surety."

We have dealt with the case, conceding the correctness of the position of the plaintiff, that she became a surety of the husband by transferring her property to secure his debt, but while the wife, under such conditions, is frequently referred to in the decisions as a surety, she does not assume the obligations and liabilities of the ordinary surety, and cannot be classed with indorsers.

She has not promised to pay the debt absolutely or conditionally, and no judgment can be recovered against her individually.

She has simply transferred her property to secure her husband's debt, and her property is treated as a surety. (*Hinton v. Greenleaf,* 113 N. C., 7), and to the extent it is used in payment of the debt she becomes a creditor of the husband.

We conclude that there is no error.

Affirmed.