CHEMICAL COMPANY OF CANTON v. T. H. PEGRAM et al.

*Contract—Surety—Indulgence to Principal Debtor—Release of Surety.*

1. A contract made by a creditor with a principal debtor for forbearance to sue for a fixed and limited period, founded on a sufficient consideration, without reserving the right to proceed against the surety, and made without his assent, releases the surety; therefore

2. Where an agency contract, to which defendants were sureties, provided that the agent of plaintiff (the principal debtor) would give his promissory notes for goods sold by him, payable at the times fixed in said contract, defendant sureties being liable therefor, and said notes were executed, and the creditor at the maturity of said

notes had a settlement with the agent (the principal debtor) and surrendered the old notes to him, accepting notes due at future dates in renewal of and substitution for the same, without reserving any rights against the sureties or obtaining their consent to the extension: *Held*, that such acceptance of new notes constituted a contract on the part of the creditor to postpone action against the principal debtor until they matured, and hence discharged the sureties.

CIVIL ACTION, heard at July (special) Term, 1892, of FORSYTH Superior Court, on the report of referees and exceptions thereto.

The action was brought by the Chemical Company of Canton against their agent, T. H. Pegram, Jr., to recover an alleged balance due by him for fertilizers sold, amounting to $4,140, and against L. W. Pegram and T. H. Pegram, Sr., to recover the penalty ($3,000) of a bond executed by them as sureties for Pegram, Jr.

The bond was as follows:

"Know all men by these presents, that we, T. H. Pegram, Jr., L. W. Pegram and T. H. Pegram, Sr., of said county and State, are held and firmly bound unto the Chemical Company of Canton, Baltimore, Md., in the sum of $3,000, for the payment of which we bind ourselves jointly and severally, our heirs, executors and administrators, firmly by these presents, signed and sealed the 22d day of May, 1885.

"The condition of the above obligation is such that whereas the said T. H. Pegram, Jr., has become the agent of the Chemical Company of Canton, and whereas the said T. H. Pegram, Jr., is required to execute and deliver to the said Chemical Company of Canton a bond in the sum of $3,000 for the faithful performance of his part of his contract with said company, including the contract of 1884 and the present year, and all subsequent contracts:

"Now, therefore, if the said T. H. Pegram, Jr., shall faithfully perform his contract with said company, and meet all the requirements of the same, then this obligation shall be null and void, otherwise to remain in full force and effect.

> "T. H. PEGRAM, JR., (Seal).
> "L. W. PEGRAM, (Seal).
> "T. H. PEGRAM, SR., (Seal)."

The cause was referred to A. H. Eller and E. A. Griffith, Esqs., who made their report as follows:

"1. We find that T. H. Pegram, Jr., one of the defendants, agreed, in writing, to act as agent of the plaintiff company for the sale of their fertilizers at Winston, N. C., during the years 1884, 1885, 1886 and 1887, and that he did so act.

"2. We find that the said T. H. Pegram, Jr., agreed with the plaintiff company, by several writings, to purchase fertilizers from them, naming small quantities, and 'as much additional as may be mutually satisfactory.'

"3. We find that during the continuance of said agency T. H. Pegram, Jr., did purchase from the plaintiff company fertilizers amounting to $8,298.20, for which he delivered to the plaintiff company his promissory notes of different dates, amounts and times of maturity.

"4. We find that payments were made at different times, until this amount of indebtedness was reduced to $5,769.42, as evidenced by ten promissory notes of different amounts, and bearing several dates of execution from May 18, 1886, to March 3, 1887.

"We find that on November 16, 1887, a settlement was had between the plaintiff company and T. H. Pegram, Jr.; that the accrued interest on the said ten notes was added and all credits deducted, and four renewal notes were exe-

cuted by said T. H. Pegram, Jr., covering amount due, according to their calculation, which amount thus appears:

"One note, dated November 16, 1887, due December 7, 1887, $1,255; one dated November 16, 1887, due January 7, 1888, $1,261.46; one dated November 16, 1887, due February 7, 1888, $1,001.24, and one dated November 16, 1887, due March 7, 1888, $1,006.84, aggregating $4,471.47. All bearing six per cent. interest after maturity.

"We find this amount too large by $54.07. We find subsequent payments as follows: December 17, 1887, cash paid, $25.38; January 24, 1887, cash paid, $181.40; April 24, 1887, cash paid, $83.25.

"We find by calculation that the principal sum, due March 7, 1892, of said notes, to be $4,181.54, and the interest thereon $1,045.97, aggregating $5,227.51.

"6. We find that during the continuance of said agency T. H. Pegram, Jr., took notes, mortgages and other evidences of debt from parties to whom he sold said fertilizer to the amount of $10,696.12, all of which were turned over to the plaintiff company, to be treated as collateral security to Pegram's notes; and that on February 12, 1887, said notes, etc., were redelivered to T. H. Pegram, Jr., for collection according to agreement.

"7. We find that T. H. Pegram, Jr., prior to his assignment on December 5, 1887, made collections on said collateral notes, etc., to the amount of $7,791.87; that he paid over to plaintiff company thereof $3,730.58; in his hands, $4,061.29.

"8. We find as a fact that on November 16, 1887, and prior thereto, when plaintiff company and T. H. Pegram, Jr., had a settlement, and took and executed the four renewal notes covering total sums due, that plaintiff company knew that T. H. Pegram, Jr., had been and was col-

lecting and using as his own these moneys so collected on the collateral notes.

"9. We find that on December 5, 1887, T. H. Pegram, Jr., assigned all of his property to J. C. Buxton and J. S. Grogan, naming the plaintiff company in his third class of preferred creditors to amount of $3,000, more or less, on account of money collected and not paid over.

"10. We find that on December 14, 1887, the plaintiff company demanded of the defendant T. H. Pegram, Jr., all of said collateral notes, accounts, etc., and that Pegram, under protest, surrendered the same to the amount of $2,904.25, and that they have been in the possession of the plaintiff company since that time.

"11. We find that at the time such notes were so demanded and surrendered three-fourths of the face value thereof could have been collected; that is, $2,178.18.

"12. We find that on the 22d day of May, 1885, all of the defendants entered into a bond of $3,000 in favor of the plaintiff company for the faithful performance of T. H. Pegram, Jr.'s, part of the contract with the plaintiff company for 1884 and 1885, and all subsequent contracts.

"We find that said contract requires T. H. Pegram, Jr., to settle for all fertilizers by note, deliver all notes of purchasers to plaintiff company as collateral security; hold goods and proceeds in trust for the payment of his notes; first apply such proceeds to the payment of said notes, and finally to pay for all goods shipped on his order.

"We conclude, therefore, as matter of law, that L. W. Pegram and T. H. Pegram, Sr., are liable as surety on all indebtedness of T. H Pegram, Jr., to the plaintiff company not exceeding $3,000.

"That the settlement and execution of the four renewal notes on November 16, 1887, discharged all notes executed prior thereto, and became a new promise to pay for all fer-

tilizers shipped on his order to that date, and as such is secured by the bond.

"That the character of indebtedness theretofore existing by reason of the use or misappropriation of plaintiff's funds was thereby converted into a simple contract debt.

"That the plaintiff, by demanding and taking out of the hands of T. H. Pegram, Jr., the collateral notes to amount of $2,904.25, which, according to agreement, were delivered to him for collection, thereby relieved him of the responsibility of their collection, and must account to him for such sum as might have been realized on same, which is found to be $2,178.18.

"That after deducting from the sum total of indebtedness, viz., $5,227.51, the said amount, $2,178.18, we have $3,049.33.

"And therefore direct that judgment be entered against T. H. Pegram, Jr., as principal, for the sum of three thousand and forty-nine dollars and thirty-three cents, with interest thereon from March 7, 1892, at six per cent., and against L. W. Pegram and T. H. Pegram, Sr., as surety, for three thousand dollars, with interest at six per cent. per annum from March 7, 1892."

The plaintiff excepted to the report of the referees in this matter filed in the cause:

To the finding of fact and conclusions of law by said referees, to-wit: That the settlement and execution of the four renewal notes on November 16, 1887, discharged all notes executed prior thereto, and became a new promise to pay for all fertilizers shipped on his (T. H. Pegram, Jr.) order to that date.

The defendants excepted to the finding of the referees in that they find as a conclusion of law that L. W. Pegram and T. H. Pegram, Sr., were liable as sureties to the amount of three thousand dollars, when they should have found

that the extension of time granted to T. H. Pegram, Jr., and the taking of new individual notes, in which the accrued interest was added to the principal, and assenting to the use of plaintiff's money in his hands, in law released the sureties from all liability; the facts having been found by the referees that such renewal and extension and assent to use of money accrued, and there being no evidence that the said sureties assented to it, or had knowledge of it, or of any part of it.

Upon the hearing of the report and exceptions filed by plaintiff and defendants the Court overruled plaintiff's exceptions and sustained defendants' exceptions, and adjudged that the plaintiff recover of the defendant T. H. Pegram, Jr., the sum of $3,049.33, with interest thereon from March 7, 1892, until paid, and the costs, and that the defendants L. W. Pegram and T. H. Pegram, Sr., sureties on the bond sued on, go without day.

The plaintiff appealed from so much of the judgment as dismissed the action against the sureties.

*Messrs. Glenn & Manly*, for plaintiff.
*Messrs. Watson & Buxton*, for defendants.

BURWELL, J.: It was said by Chief Justice SMITH in *Forbes* v. *Sheppard*, 98 N. C., 111, that "The effect of a contract for forbearance to sue for a fixed and limited period, founded on a sufficient consideration with the principal, without reserving the right to proceed against the surety and made without his assent, is too well settled to need further discussion." An examination of the record in this case shows that every element necessary to constitute this defence for the defendant sureties concurs here. They undertook that their principal would faithfully per-

form his contracts with the plaintiff and would meet all their requirements.

By the terms of those contracts, which are set out in the complaint, the principal debtor, plaintiff's agent, agreed that he would pay plaintiff for fertilizers sold by him at times therein specified, and that, as evidence of his liability, he would give to plaintiff his promissory notes for such sums, due and payable on the days fixed in the said contracts. This latter thing he did. It seems to be conceded that the defendants were bound for the payment of those notes at maturity, for their payment then was one of "the requirements of the contracts."

The acceptance of notes due at certain future times in renewal of and substitution for the notes then past due, for which these sureties were liable, accompanied by the surrender of the old notes, a settlement being then made, constituted a contract on the part of the plaintiff that it would postpone the assertion of its rights against the principal debtor, the maker of the notes, till they matured. This was founded upon a sufficient consideration, the renewal of the notes and the making the settlement. There was no reservation of a right to collect the old notes. So far as appears their surrender was without condition. Nor was there any reservation of right against the sureties, nor any evidence that they assented to the extention of time. Hence the sureties were discharged for two reasons: the contract had been materially altered without their consent, and it was no longer the contract for the performance of which they were liable; they had a right, when the debts for which they were bound became due, to pay those debts and *immediately* proceed against the principal for indemnity— plaintiff's conduct deprived them of this right.

We are precluded from any consideration of the point made here for the first time, that, as the answer of the

defendant sureties did not aver that they had been released from liability by extension of time granted to the principal, they could not avail themselves of that defence, for we can consider only such exceptions when they are first taken in the Court below. *Harper* v. *Dail*, 92 N. C., 394. This is settled by repeated adjudications.

No Error.