### REVELL v. THRASH.

(Filed June 6, 1903.)

PRINCIPAL AND SURETY—*Release—Extension of Time—Interest.*

The receipt of interest in advance from the principal debtor after maturity of the debt is *prima facie* evidence of an extension of time and releases the surety.

ACTION by O. D. Revell against John M. Thrash, heard by Judge *M. H. Justice* and a jury, at March Term, 1902, of the Superior Court of BUNCOMBE County. From a judgment for the defendant, the plaintiff appealed.

*Tucker & Murphy* and *F. A. Sondley,* for the plaintiff.
*George A. Shuford* and *C. A. Moore,* for the defendant.

MONTGOMERY, J. There is only one exception to evidence appearing in the case and that exception the counsel of the appellant did not refer to in their three briefs or in their oral arguments; and it is therefore almost useless to write that the exception is not sustained. The only question before the court is whether there was any sufficient evidence—any evidence more than a scintilla—that the plaintiff appellant extended the time for the payment of the note as to W. M. Cocke, the principal, without the knowledge or consent of the defendant, who was a surety.

The contentions of the appellant were first, that before a surety can be discharged or released because of time having been given to the principal debtor in which to pay his debt there must be an agreement between the creditor and the principal for the extension; Second that the period for which such extension was given must be fixed and definite, and that there was no evidence in this case tending to prove such facts; Third that receiving interest in advance without an *express* contract for extension does not release a surety; and Fourth,

that an extension which does not indulge the principal beyond the time in which a judgment could be obtained would not release a surety.

The plaintiff in his complaint duly verified alleged that on the 11th of September, 18—, $100 was paid on the note and on October 22, 1895, $150 and interest to December 29th, 1895, and that the credits were endorsed upon the back of the note. It appears from his testimony that the $100 was paid in 1893. In his testimony he stated that the $150 was paid on the 27th October, 1895, and not on the 22nd of October, as he alleged in his complaint and as the credit appears on the note. He further said in his testimony that in October, 1895, without mentioning the day as he alleged in his complaint, that Cocke, the principal, paid him $10 and said at the time "I want to pay some interest", and that in the calculation he found it paid the interest to December 29, 1895, and he so entered the credit. He further testified, "Note never extended; none asked; Cocke kept the interest paid up to December 29, 1895. Cocke died in 1895." He further said that the defendant appellee knew nothing of the payments made by Cocke and did not consent to them.

Of course a surety will not be discharged from his obligation in cases where he relies upon an extension of time given by the creditor to his principal debtor unless it be shown that an agreement to that effect had been entered into between the creditor and his principal debtor and without the knowledge or consent of the surety, but an agreement in so many words, *i. e.,* an express agreement to extend the time is not necessary to satisfy the rule. The acts and conduct of the parties constituting the facts of the case might be shown from which the law would imply a sufficient agreement to extend. Daniel on Negotiable Instruments, Sec. 1319. On this question a standard writer has said, "It is sufficient if a mutual understanding and intention to that effect are proved. If the par-

ties act upon the terms of an implied agreement to that effect it will be sufficient." Brandt on Suretyship, Sec. 304. The same principle is announced in *Hollingsworth v. Tomlinson,* 108 N. C., 245, *Chemical Co. v. Pegram,* 112 N. C., 614.

It is also true, as stated in plaintiff's second contention the period of extension must be fixed and definite. But that is certain which can be made certain, and if the taking of interest in advance from the principal debtor without the knowledge or consent of the surety be *prima facie* evidence of an extension of time and therefore a release of the surety unless rebutted, it seems to us there was evidence in this case fixing and marking the period of extension. It becomes necessary now before considering further the law as contended for in the plaintiff's first and second contentions to consider and pass upon the question whether the receipt of interest in advance from the principal debtor is evidence tending to show an agreement and contract for an extension of time. That question seems to be settled in the affirmative by the decisions of our court and in the works of the text writers. *Scott v. Harris,* 76 N. C., 205 ; *Sutton v. Walters,* 118 N. C., 495 and in *Hollingsworth v. Tomlinson,* 108 N. C., 245, upon the same question, Judge Shepherd, for the court, quoted an extract from Brandt on Suretyship (Sec. 305) as follows: "The general rule is that the reception of interest in advance upon a note is *prima facie* evidence of a binding contract to forbear and delay the time of payment, and no suit can be maintained against the maker during the period for which the interest has been paid, unless the right to sue be reserved by the agreement of the parties. The payment of the interest is not of itself a contract to delay, but is evidence of such contract; and while this evidence may be rebutted, yet, in the absence of any rebutting evidence, it becomes

conclusive. To the same effect are Tiedeman on Com. Paper, Sec. 424, and Daniel on Neg. Inst., Sec. 1318.

Now let us consider the evidence in this case with the law on the subject. The note matured on the 11th of June, 1893. According to the appellant's evidence there was a payment of $100 September, 11, 1893, (he said it was paid about six months after he bought it, which was ten years before he was testifying) and that he received $150 on the 27th of October, 1895, although the credit is entered on the note itself October 22, 1895. He further testified that in October, without naming the day, he received $10. That $10 specifically does not appear as a credit endorsed on the note, but the plaintiff admitted that it was embraced in a credit on the bond in these words, "Interest paid to December 29, 1895." He further testified that Cocke kept the interest paid up to the 29th December, 1895. It is evident from looking at the credit on the note from the complaint of the plaintiff and his own testimony that an explanation is necessary as to the intention of the parties as to the $10 interest payment. Now, when the plaintiff appellant received this $10 payment from Cocke accompanied by the words, "I want to pay some interest," what was meant by the transaction? It was not a question of law, it was a question of intention of the parties under all the evidence in the case, and it was for the consideration of the jury. The $10 having been paid as interest and credited as interest according to the calculation of the plaintiff, creditor, the interest was paid in advance and until December 29, 1895. When that credit was received the time of extension was definitely fixed to be as long as the amount would pay the interest, provided the jury should find from all the evidence that an extension of time was the intention of the parties. But the plaintiff contends in the last place that no harm or injury could or did come to the defendant if such extension of time did take place as is claimed by the de-

fendant for the reason that before judgment could have been taken by the defendant against Cocke, if the defendant had paid the plaintiff the note and sued Cocke for money paid to his use, Cocke had died; and that if a judgment had been taken against Cocke's personal representative it would have given him no preference over Cocke's other creditors. In support of that proposition the plaintiff's counsel referred us to Daniel's Negotiable Instruments, Section 1319. In that section the general proposition is laid down that "If the time be definite and unconditional a day will suffice." The author, there, further says "the indulgence must be for a period longer than that which would be required by law for judgment to be obtained, otherwise, though upon a valid consideration, the surety will not be discharged." The author then cites as authority for that position Story on Promisory Notes, Sec. 415. That author says, there, that if the agreement for extension be of such a nature that the maker can by *law* (italics the writer's) obtain and entitle himself without the consent of the holder (as where the holder had been already discharged from the note in bankruptcy) there the agreement will not operate as a discharge of the endorsers for the reason that the endorsers can not under such circumstances be injured by the delay or if injured, it is by operation of law and not dependent upon the act of the holder. Thus, for example, if pending a suit on the note against the maker the holder should agree to give time to the maker for payment thereof short of the time within which judgment should regularly be obtained against him, that would not be a discharge of the endorser." And that is the same example given by Daniel in Section 1319. But to show that it was not the intention of the author to vary the rule that if the time be definite and unconditional the shortness of time is immaterial, so that it be for a day or more, is clearly evidenced by the last few lines of Section 1319—"And the

general rule above stated applies only to cases where time
has been given after suit brought and does not apply where
time is given by contract before any action has been com-
menced." In *Scott v. Fisher,* 110 N. C., 311; 28 Am. St.
Rep., 688, this court recognizes the principle that there must
be a definite time fixed for the extension of credit, and
holds that an agreement to extend the time for twenty to
thirty days is definite as to twenty days, and therefore dis-
charges the surety, citing Daniel on Negotiable Instruments,
Sec. 1319. In *Forbes v. Sheppard,* 98 N. C., 111, the
principal debtor paid to the creditor $25 for indulgence. The
creditor tendered the money back to the debtor and com-
menced action on the same day of the receipt of the money
against the principal debtor and the surety. The surety
set up a release of himself because of this extension of time,
and this court said: "The effect of a contract of forbearance
to sue for a fixed and limited period founded on a sufficient
consideration with the principal, without reserving the right
to proceed against the surety and made without his assent, is
too well settled to be further discussed;" and further, "inas-
much as no indulgence was in fact given, as suit was brought
on the very day when the money was paid, in disregard of
the contract, it occurred to us that it was thus virtually an-
nulled, and no disability imposed on the surety to his disad-
vantage. But the authorities are to the contrary, and it is
held that the exoneration grows out of the agreement to for-
bear and is not affected by the creditor's breach of it after it
was made." In *Pipkin v. Bond,* 40 N. C., 91, the question
before the court was whether there was an indulgence to the
principal with the knowledge or consent of the plaintiff; and
whether that was done upon an agreement for forbearance,
"which legally or equitably put it out of the power of the
creditors to enforce payment from the principal for some
period." Chief Justice Ruffin, in delivering the opinion,

quoted with approval the language of Lord Eldon in *Reese v. Barrington,* 2 Vessey, Jr., 545, where the same question was involved, "It is the most evident equity that the creditor should not carry on any transaction without the privity of him who must necessarily have a concern in every transaction with the principal debtor;" and the Chief Justice further quoted from Lord Eldon in the same case, "He could not try the cause of inquiring what mischief the forbearance might have done to the surety; for that would go into a vast variety of speculation upon which no sound principal could be built." The same view is expressed in Daniel on Negotiable Instruments, Sec. 1313, where it is said, "The principle on which sureties are released is not a mere shadow without substance. It is founded upon a restriction of the rights of the sureties by which they are supposed to be injured. Therefore, when there is a legal impossibility of injury the principle does not apply. This was decided to be the case where the maker of a note was a discharged bankrupt, and an agreement between him and the holder for two months delay, although on a valid consideration, it was held did not discharge the endorser, because the latter could not by making payment have recourse against him. To discharge a surety by giving time to the principal, the creditor must put it out of his power for the time being to proceed against the principal."

In *Swire v. Redmon,* 1 Q. B. Div., 536 (1876), it is said: "In the immense majority of cases the act does not actually damage the surety of shilling, yet the doctrine is so firmly established that only legislative enactment can change it."

No Error.