EVON L. HOUSER, Administrator, v. T. M. FAYSSOUX, L. F. GROVES, AND E. L. WILSON.

(Filed 9 December, 1914.)

1. **Corporations—Bills and Notes—Indorser—Notice of Dishonor.**
    One who places his signature upon the back of a commercial paper without indication that he signed in any other capacity is deemed an indorser (Revisal, 2212), and is entitled to notice of dishonor; and the entity of a corporation being distinct, the rule applies when its directors indorse the corporate note for accommodation.

2. **Bills and Notes—Payment by Maker—Indorser—Limitations of Actions.**
    Payments made by the maker of a commercial paper will not repel the bar of the statute of limitations as to an indorser.

APPEAL by plaintiff from *Shaw, J.,* at September Term, 1914, of GASTON.

Civil action to recover on a promissory note, as follows:

$2,000.

One day after date we promise to pay J. B. White or his order the sum of $2,000, for value received of him, interest at 6 per cent per annum from 1 July, 1902.

This the 2d day of July, 1902.     DALLAS COTTON MILLS,
(Seal)           J. R. LEWIS, *President.*
Attest: J. D. MOORE, *Secretary and Treasurer.*

168—1

HOUSER *v.* FAYSSOUX.

The defendants indorsed this note by writing their names on the back before delivery to plaintiff's intestate, said defendants being directors of Dallas Cotton Mills. The interest on the note was paid by the corporation semiannually to 1 July, 1910. On 1 October, 1910, $100 was paid by the corporation, and similar payments 15 November, 1910, and 1 February, 1911.

At the conclusion of the evidence the court rendered judgment for the defendants, dismissing the action, and the plaintiffs appealed.

*S. J. Durham, F. I. Osborne for plaintiffs.*
*Mason & Mason, Mangum & Woltz for defendants.*

BROWN, J. There are two defenses interposed: want of notice of dishonor, statute of limitations. That the defendants were accommodation indorsers on the note sued on is admitted.

It appears that the defendants placed their signatures on the back of the note; that they were not otherwise parties to the note; and it not appearing that they intended to be bound in some other capacity, they became liable as indorsers and were entitled to notice of dishonor. *Perry v. Taylor,* 148 N. C., 362; Eaton and Gilbert on Commercial Paper, sec. 108.

It is contended, however, that the defendants were directors of the cotton mills and, therefore, no notice of dishonor was required; and for this position the plaintiff cites *Hall v. Myers,* 90 Ga., 674.

It appears in the declaration in that case, and is admitted by the demurrer:

1. "That each of said directors so signing said notes did so as surety for the maker, and it was so understood and agreed between each of them"; and

2. "That the maker (the company) was 'utterly insolvent' at the time of the execution of the note."

The Court bases its decision upon these facts, and the inference from this opinion is that the Court would have decided the case differently if it had not been *understood and agreed between the directors, who indorsed their names on the notes,* that they were "doing so as *sureties for the maker,"* or if the company had been solvent.

In the case at bar there was no understanding or agreement that the indorsers were signing the note in controversy as sureties, and there was no evidence tending to prove that the Dallas Cotton Mills was insolvent. The facts in that case distinguish it from this. If the defendants had "understood and agreed that they were signing the note in controversy as sureties," it would take the case out of the provisions of section 2212 of the Revisal; but nothing of that nature appears in the case. The *Hall case* is not in line with the great weight of authority.

It is generally held that the fact that the indorsers constituted a majority of the board of directors of a corporation does not dispense with the necessity of notice of dishonor. *Phipps v. Harding,* 70 Fed. Rep., 468, C. P. A., and cases cited.

The prevailing doctrine is that the corporate entity is as distinct from its officers and directors as it is from third persons with whom it transacts business, and stockholders ·or directors who lend their individual credit to the corporation of which they are members by indorsement of negotiable paper, or otherwise, are entitled to the same rights and immunities which attach to the status of indorser or surety, where third parties have assumed those liabilities. Eaton and Gilbert on Commercial Paper, p. 486; *Burg v. Legge,* 5 M. and W. (Eng.), 418; *Carter v. Flower,* 16 M. and W. (Eng.), 749; *Brown v. Ferguson,* 4 Leigh (Va.), 39; 24th Am. Dec., 707.

Referring to *Hull v. Myers,* the Circuit Court of Appeals in *Phipps v. Harding, supra,* says: "The case of *Hull v. Myers,* 90 Ga., 674 (16 S. E., 653), is urged upon our attention in support of this contention. The decision of the Court upon this question is bottomed, as we think, upon incorrect reasoning, and is without the support of authority."

A very full and able discussion of this subject is to be found in the case of *McDonald v. Luckenback,* 170 Fed. Rep., 434, in which it is said: "It is true that the defendant and the two other indorsers were officers and stockholders of the company, as was also the decedent and payee of the note; that they were interested in the success of the corporation of which they were directors and stockholders; that they were, so to speak, managing directors, and as such were financing the affairs of the corporation. . . . We think there is no evidence disclosed by the record tending to show that anything else was contemplated by those who negotiated this loan than that it was to be a loan to the corporation for the promotion of its business, for which the corporation was to be primarily bound by the promissory note, which it made, and that the directors who loaned their credit by indorsement assumed the secondary liability of indorsers, and none other.

"All evidence is consistent with this state of the transaction, and no other interpretation, it seems to us, can be given to it, unless, indeed, directors and officers of a corporation interested in its successful operation cannot, in negotiating a loan for the benefit of the corporation, insure its credit by assuming only the liability of indorser of its negotiable paper. Such a proposition, of course, can be sustained neither by reason nor authority."

As to the plea of the statute of limitations, we think the note is barred.

It is true that it is well settled in this State that a payment by the principal on a note before the bar of the statute operates as a renewal

of the debt as to himself and also as to the sureties on the note. At one time this was true as to indorsers likewise, as an indorser was regarded as a surety. *Green v. Greensboro College,* 83 N. C., 449; *Garrett v. Reeves,* 125 N. C., 529.

In *Johnson v. Hooker,* 47 N. C., 29, *Pearson, J.,* says: "The act of 1827 makes an indorser liable as surety. The effect is to put him on the footing of a maker of the note and to make him liable to the holder, the same as if his name was on the face of the note instead of being on the back."

While the law remains the same as to a surety, and a payment by the principal will operate as a renewal of the debt, as to the surety, who is regarded as a maker of the note, an indorser is no longer so regarded.

There is a broad and well recognized distinction between a surety and an indorser, as is pointed out clearly in *LeDuc v. Butler,* 112 N. C., 461, in which case it is said: "Part payment of a note by the payee, who has indorsed it, will not repel the bar of the statute of limitations as against the maker, the statute confining the act, admission, or acknowledgment, as evidence to repel the bar, to the associated partners, obligors, and makers of a note."

The judgment is

Affirmed.