FIRST NATIONAL BANK OF HENDERSON v. S. H. JOHNSTON.

(Filed 29 September, 1915.)

**1. Bills and Notes—Negotiable Instruments—Signature on Back—Indorsers —Dishonor—Notice.**

One who signs his name on the back of a negotiable instrument, without indication that he did so in any other capacity, is deemed an indorser and is entitled to notice of dishonor.

**2. Bills and Notes—Negotiable Instruments—Indorsers—Dishonor—Notice— Waiver.**

Notice of dishonor may be waived by an indorser of a negotiable paper before or after maturity thereof by express words or by necessary implication, and when so waived, notice of dishonor need not be given. Revisal, secs. 2239, 2259, 2260, 2261, 2270.

**3. Same—Extension of Time—Maturity—Agreement—Guarantors of Payment.**

Where it is expressly agreed upon the face of a negotiable note given by the maker to the bank that "the subscribers and indorsers hereby agree to continue and remain bound . . . notwithstanding any extension of time granted to the principal, hereby waiving all notice of such extension of time," and upon maturity an indorser thereon agrees to a further extension, and notice of dishonor is not given him when the instrument again matures, and he seeks to avoid liability for that reason: *Held*, his having notice of dishonor and nonpayment of the note at its original maturity and consenting to the extension make his liability on the paper absolute, as a guarantor of payment, not requiring further notice of dishonor to be given him.

WALKER, J., concurs in the result; CLARK, C. J., dissenting.

APPEAL by plaintiff from *Ferguson, J.,* at the May Term, 1915, of VANCE.

Civil action, brought to recover on the following promissory note:

$600.                                    HENDERSON, N. C., March 30, 1914.

Ninety days after date, for value received, I promise to pay to the First National Bank of Henderson, N. C., or order, six hundred dollars, negotiable and payable at said bank, with interest at the rate of six per cent per annum, after maturity, having deposited with said bank as collateral security for payment of this or any other liability or liabilities of   .   .   .   to said bank, due or to become due, or which may hereafter be contracted, the following property, viz.:

Two notes, $250 each, signed by M. W. and Nannie Askew, secured by real estate, with such additional collateral as may from time to time be required by the president or cashier of the First National Bank of Henderson, N. C., and which additional collateral I hereby promise to give at any time on demand, and if not so given when demanded, then this note to become due and payable at once, with full power and authority to said bank to sell, assign, and deliver the whole or any part thereof, or any substitutes therefor, or any additions thereto, at any broker's board, or at public or private sale, at the option of said bank, or its president or cashier, or its or their or either of their assigns, on the nonperformance of this promise, or the nonpayment of any of the liabilities above mentioned, or at any time or times thereafter, without advertisement or notice, which are hereby expressly waived; and upon such sale the holder hereof may purchase the whole or any part of such securities discharged from any right of redemption and by these presents.

And after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made, to pay any, either or all of said liabilities to said bank or its assigns, as its president or cashier, or it or its or their or either of their assigns shall deem proper, returning the overplus, if any, to the undersigned.   And the undersigned agrees to be and remain liable to the holder hereof for any deficiency.

The subscribers and indorsers hereby agree to continue and remain bound for the payment of this note and all interest and charges thereon, notwithstanding any extension of time granted to the principal, hereby waiving all notice of such extension of time.

(Signed)    M. H. JOHNSTON.
(Signed)    R. H. JOHNSTON.

Interest paid to August 27th.
Interest paid to September 26th.
Interest paid to November 15th.

The name of defendant written on back of note as indorser.

No notice of dishonor or of nonpayment was given by the plaintiff to the defendant at or before maturity. The defendant pleaded this want of notice as a bar to any recovery against him.

The court rendered judgment in favor of the defendant, and the plaintiff appealed.

*T. T. Hicks* for *plaintiff.*
*A. C. and J. P. Zollicoffer* for the *defendant.*

BROWN, J. The following statutes are in point:

*Revisal, 2239:* "Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and each indorser, and any drawer or indorser to whom such notice is not given is discharged."

*Revisal, 2259:* "Notice of dishonor may be waived either before the time of giving notice has arrived or after the omission to give due notice, and the waiver may be express or implied."

*Revisal, 2260:* "Where the waiver is embodied in the instrument itself, it is binding upon all parties."

*Revisal, 2261:* "A waiver of protest, whether in the case of a foreign bill of exchange or other negotiable instrument, is deemed to be a waiver, not only of a formal protest, but also of presentment and notice of dishonor."

*Revisal, 2270:* "A person secondarily liable on the instrument is discharged by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

It is well settled that a surety on a promissory note or bond is not entitled to notice of dishonor or nonpayment, but one who places his signature upon the back of a commercial paper without indication that he signed in any other capacity is deemed an indorser, and is entitled to notice of dishonor. *Houser v. Fayssoux,* 168 N. C., 1; *Bank v. Wilson,* 168 N. C., 557.

This notice of dishonor may be waived by the indorser before or after the maturity of the note by express words or by necessary implication. When so waived, notice of dishonor need not be given.

The facts in this case are that the principals to the note paid interest on the same to 15 November, 1915, and that no notice of dishonor or nonpayment by the makers was given by plaintiff to the defendant, but that plaintiff on 9 December, 1914, placed said note for collection in the hands of its attorney, who then at once notified the makers and the

defendant S. H. Johnston that it had not been paid, and demanded payment of all of them; that said defendant S. H. Johnston at once called on said attorney and brought with him Mr. Richardson, who was considering taking up the same with the collateral, and said Richardson took the note and collateral to examine it and later returned it and declined to take it.

It is contended by the plaintiff that notice of dishonor was waived by the indorser by the express words of the instrument, and that having consented to such indefinite extensions of payment as the principals to the note and the plaintiff should agree upon, the indorser is not entitled to notice of nonpayment.

The defendant contends that he consented to the extensions of time granted the principals, and, consequently, he was bound by such waiver *up to 15 November, 1915.* At that time the extension ended, the note matured, and the defendant, indorser, was then entitled to notice of nonpayment and dishonor.

The authorities seem to hold that where the indorser consents in advance of maturity to extensions of the time of payment of the note, he thereby waives his right to receive notice of dishonor and presentment for payment. *Worley v. Johnson,* 33 L. R. A., 641, notes.

In Daniel on Neg. Inst. (6 Ed.), by Calvert, sec. 1106, it is said: "Where the indorser agrees to an extension of time of payment, it waives demand, protest, or notice."

In *Cady v. Bradshaw,* 116 N. Y., 191, it is held that where the indorser consented that time of payment be extended a year he in effect waived notice of dishonor and demand for payment, citing Parsons on Notes and Bills, 587, and many adjudications in the opinion. *Barclay v. Weaver,* 19 Pa. St., 397.

The point is expressly decided in *Ridgeway v. Budd,* 13 Pa. St., 208, where it is held that "if an indorser of a promissory note agrees to extend the time of payment beyond the maturity of the note, such agreement amounts to a guaranty that he will hold himself bound at the expiration of the period agreed upon by him." In the opinion it is said: "This is a distinct guarantee that he (the indorser) will hold himself bound at the end of thirty days after maturity, and is within the case of *Foster v. Jurdison,* 16 East, 104, establishing that under like circumstances the holder was not bound to give notice," citing Story on Prom. Notes, 314; *Williams v. Brabst,* 10 Watts, 111; *Scott v. Green,* 10 Bar., 103; *Clark v. Devlin,* 3 Bos. & Pul., 365.

The reason underlying this rule is given in the case of *Sheldon v. Horton,* 43 N. Y., 93, and that is because when the indorser consents to an extension of payment, he has notice that the note is not paid at its maturity, and by consenting to an extension his liability then becomes

34—169

absolute as a guarantor, "and no subsequent demand or notice at any time is required."

In *Amoskeag Bank v. Moore,* 37 N. H., 539, it is held: "An agreement between the holder and indorser of a promissory note, made before its maturity, that the time of payment shall be extended, is a waiver by the indorser of demand and notice; and in such case no demand is necessary at the expiration of the extended time."

Referring to the effect of the indorser's consent to the extension of time for payment, the Court says: "This constitutes a waiver both of demand and notice, precisely as if they had expressly indorsed with such waiver; and thereby the contingent character of their liability as indorsers, depending upon the demand of payment upon the maker, and notice of nonpayment, is converted into one of an absolute character *as of guarantors.* Their liability being thus fixed and absolute at the maturity of the note, by reason of their indorsement and the waiver of demand and notice, the fact that no demand was made at the expiration of the extended time is immaterial, as is also the evidence offered in relation to their subsequent promise to pay. The indorsement and the waiver render them liable to pay, with or without subsequent promise, and with or without a demand upon the maker at any time. See, also, *Glaze v. Ferguson,* 48 Kan., 157; *Bank v. Ryerson,* 23 Iowa, 509; *Bank v. Dibrell,* 91 Tenn., 301; *McMonigal v. Brown,* 45 Ohio State, 499."

We are of opinion that upon the facts agreed the plaintiff is entitled to judgment.

Reversed.

WALKER, J., concurs in result.

CLARK, C. J., dissenting: It would seem that the court below ruled correctly. Rev., 2239, provides: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and each indorser, and any drawer or indorser to whom such notice is not given is discharged."

Rev., 2259, provides that notice of dishonor may be waived, and section 2260 that such waiver may be embodied in the instrument. Rev., 2270, provides that "A person secondarily liable on the instrument is discharged by any agreement binding on the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

The agreement in this instrument to which the indorser is a party, by writing his name on the back thereof, provides: "The subscribers and indorsers hereby agree to continue and remain bound for the pay-

ment of this note and all interest and charges thereon, notwithstanding any extension of time granted to the principal, hereby waiving all notice of *such extension of time.*" It is clear, beyond controversy, that the waiver of the indorser was to the granting of an extension of time and to nothing more. Without such waiver he would have been discharged by the extension of time granted by the plaintiffs to the principal debtor. It is clear that he entered into no contract whatever to waive notice of dishonor by nonpayment at the maturity of the note, to which notice he was entitled by Rev., 2239.

The object of giving notice of dishonor by nonpayment as required by Rev., 2239, is that the party secondarily liable may take prompt steps to secure himself in the manner provided by law. If this is so when the note falls due at the original date, there is still more reason that such notice shall be given when by reason of extensions, of which the indorser knows nothing, the note falls due and is then dishonored without his knowledge. Presumably he knows when the original note falls due, but even in such case the statute requires that notice shall be given him, if the note is not paid at maturity, for the presumption is that it will be paid. For a far stronger reason, when, as in this case, the indorser has waived a release which would have come to him by an extension of time, the indorser is entitled to notice of nonpayment at the maturity of the note, which occurs by reason of the fact that the bank refuses to again extend the note. The holder knows of this date. The indorser does not. The indorser in this case has done nothing expressly or impliedly to waive notice of nonpayment, and should have had it, as Rev., 2239, requires.

It is true that in other States there have been conflicting decisions on this point. The statute varies in different States, and the decisions also, most of which were prior to the adoption of the Uniform Negotiable Instruments Law. We have no statute, and no decisions, depriving the indorser of notice of the nonpayment of a negotiable instrument when it falls due when, as in this case, he has not waived the same. His waiver of release by reason of any extension of time by the bank made it all the more incumbent upon the bank to give notice of nonpayment when the bank, by its own act in refusing further extension, has fixed a new date for the maturity of the note, of which the indorser has no notice. If given notice, the indorser would have had the right to take up the note, and could have taken steps to secure himself, which may now be beyond his power.

A waiver of release by an extension is not a waiver of notice of nonpayment, which puts an end, without the knowledge of the indorser, to such extension.