THE FIDELITY BANK v. W. H. HESSEE, J. A. HESSEE, R. O. EVERETT.

(Filed 19 September, 1934.)

1. **Bills and Notes F d—Definite extension of time granted maker does not relieve endorsers where note contains agreement to remain bound.**

   Where the face of a note contains an agreement that the parties should remain bound notwithstanding any extension of time granted the maker, and extensions of time are granted the maker for definite periods of time upon payment of interest by him, the endorsers remain liable although ignorant of such extensions and payments of interest by the maker, they being bound by their agreement in the note and the extensions being supported by the necessary elements of certainty, mutuality and consideration. C. S., 3092, 3102.

2. **Limitation of Actions C a—Where parties agree to extension of note, payment of interest by maker for definite extension of time prevents running of statute in favor of endorsers.**

   While payment of interest on a note by the maker will not ordinarily affect the running of the statute of limitations in favor of the endorsers, where the endorsers agree upon the face of the note to remain bound notwithstanding extensions of time granted the maker, and the maker pays interest for definite periods for extensions to dates certain, the statute does not begin to run in favor of the endorsers until after the maturity date under the last extension agreement, although the endorsers were ignorant of payments of interest by the maker and extensions of time granted him, and refused to sign a renewal note upon the original maturity date of the note.

3. **Bills and Notes H a—**

   Where certain collateral is pledged as security for a note, the holder is not required to exhaust the collateral security before suing the endorsers, especially where the collateral security is worthless.

CIVIL ACTION, before *Barnhill, J.*, at February Term, 1934, of DURHAM.

On 30 September, 1928, Durham Citizens Hotel Corporation executed a note for the sum of $5,000, payable to the plaintiff 120 days after date. The maker deposited with the plaintiff certain property as collateral security, to wit: Certain subscription notes and second-mortgage bonds of the Durham Citizens Hotel Corporation, filed with the Home Savings Bank as trustee, under a trust agreement dated 15 March, 1926, and supplemental agreement, dated 29 September, 1928. This trust agreement provides: "But if default be made in the payment of any of the notes this day executed by the corporation at their maturity, or any part thereof, according to the tenor of said notes, then and in any such case all of said notes shall immediately mature, fall due, and become collectible, anything herein or in any of said notes to the contrary notwithstanding," etc.

The pertinent recitals in the note are as follows:

"The subscribers and endorsers hereof agree to remain and continue bound therefor, notwithstanding any extension or extensions of time of payment of it, or any part of it, and notwithstanding any failure or omission to make presentment or demand for its payment, or to protest it for nonpayment; or to give notice of its nonpayment or dishonor or protest, and hereby expressly waive any and all presentment or demand for its payment, and protest of its nonpayment, and any and all notices of extension or extensions of time of payment of it, or any part of it, or of its nonpayment, or dishonor or protest, or any other notice whatsoever," etc.

The defendant with several others endorsed said note as accommodation endorsers, and thereafter the note so endorsed was delivered to the plaintiff. The defendant pleaded the statute of limitations in bar of recovery, alleging that "when the note matured about 1 February, 1929, or within a few days thereafter, an agent of the plaintiff and of the Durham Citizens Hotel Corporation came to this defendant and asked him to endorse a renewal of said note, whereupon this defendant told said agent that there were collaterals to the said note, and that the collaterals ought to be applied to the payment of the note, and that he would not endorse a renewal of the note. That subsequently other persons, in behalf of the maker of the note and of the plaintiff, asked this defendant to endorse a renewal of the note, and this defendant has not only persistently refused to endorse a renewal of the said note, but also to have any connection therewith; and has never made any payment thereon."

When the cause came on for hearing the parties waived a jury trial and agreed that the court might find the facts. The facts so found are as follows:

1. "That on 30 September, 1928, the Durham Citizens Hotel Corporation executed and delivered to the Fidelity Bank of Durham its note for $5,000, payable 120 days thereafter, to wit: 28 January, 1929, and that there were a number of endorsers thereon, each of whose liability was specifically limited to the amount specified upon the back of said note. That among the said endorsers was the defendant R. O. Everett, whose individual liability was limited to the sum of $1,000. This note was one of the series totaling $50,000 described in the second trust agreement offered in evidence dated 29 September, 1928."

2. "That since the execution of said note the said R. O. Everett has paid no amount on said note, either by way of interest or principal, and that so far as the evidence discloses, had no knowledge that the principal was paying interest thereon periodically, or procuring an extension thereof."

3. "That on or about 28 January, 1929, the maker of said note paid interest on said note to 28 May, 1929; that on or about 28 May, 1929, the maker of said note paid interest in advance on said note, extending the maturity date thereof to 25 September, 1929; that on or about 25 September, 1929, the maker of said note paid interest thereon in advance, extending the maturity date thereof to 23 January, 1930; that on or about 23 January, 1930, the maker of said note paid interest in advance, extending the maturity date thereof to 1 August, 1930; that on or about 1 August, 1930, the maker of said note paid interest in advance, extending the maturity date thereof to 1 January, 1931, and that on or about 1 January, 1931, the principal paid the interest thereon to 28 January, 1931, extending the maturity date thereof to said date. That the several payments of interest were not on every occasion made upon the maturity date of said note, but in a number of instances, the witness not being able to specify, the interest was paid several days after the maturity of said note, the witness having testified that it was possible that the interest was paid as much as twenty days after the maturity date, but that in his recollection the same was taken care of with reasonable promptness, and it appears affirmatively from the evidence that when the note matured on 1 August, 1931, the interest extending the maturity date of said note to 1 January, 1931, was not paid until 13 August, 1931."

4. "That on or about the maturity date of the note dated 30 September, 1928, the defendant R. O. Everett was approached by an agent of the maker of said note, T. C. Worth, who sought to get the defendant to endorse a renewal thereof; that the said defendant then and there notified the agent of the maker that he would not sign, and he then and there refused to sign any renewal of said note."

5. "That there is now due on said note the sum of $2,000, with interest from 28 January, 1931, and the liability on said note of each and every endorsement thereon other than W. H. Hessee, J. A. Hessee, and R. O. Everett has been discharged under the terms of the trust agreement dated 29 September, 1928, and that the individual liability of W. H. Hessee and J. A. Hessee was $500.00 each, which, together with the individual liability of R. O. Everett, totals $2,000."

6. "That the maker of said note is insolvent and is now in the hands of a receiver and in the process of dissolution, the order appointing a receiver being dated ...... July, 1932."

7. "That the collateral specified in said note and in the two trust agreements offered in evidence now remaining in the hands of the trustee thereunder, the Home Savings Bank, is of very little if any value."

8. "That T. C. Worth, the agent of the maker of said note, with whom the defendant R. O. Everett had a conversation in which he refused to sign the renewal, was also cashier of the Home Savings Bank, the trustee named in the two said agreements."

9. "That on 8 January, 1932, the second mortgage bonds held as additional security to said note as set out in the trust agreement dated 29 September, 1928, had a reasonable market value of $49.00 on each $100.00 thereof, and the payee in said note, through its vice president, L. D. Kirkland, wrote the defendant offering to sell said bonds at said price upon his paying the difference between the returns thereof and his liability upon said note, or to permit him to take up said bonds under the trust agreement."

10. "That H. R. Goodall was an endorser upon said note whose liability was limited to $1,000, and on 12 January, 1932, he purchased a bond in the sum of $1,000 under the terms of said trust agreement, and the same was credited on said note and his endorsement was erased from the note; that C. C. Council was an endorser on said note, whose liability was limited to $500.00, and on 13 January, 1932, he purchased one of said second mortgage bonds under the terms of said trust agreement, and the same was credited on said note and his endorsement erased therefrom; that J. L. Atkins was an endorser on said note, and on 23 January, 1932, he purchased one of said bonds in the amount of $500.00 and said sum was credited on said note and his endorsement was erased therefrom; that D. C. Mitchell was an endorser on said note and his liability was limited to the sum of $1,000.00, and on 9 February, 1932, he purchased one of said bonds in the amount of $1,000 under the terms of said trust agreement, and said sum was credited on said note and his endorsement was erased therefrom."

"Upon the foregoing facts the court finds as a fact that by reason of the language contained in the face of said note the cause of action of the

plaintiff against R. O. Everett is not barred by the three-year statute of limitations."

Thereupon judgment was entered in favor of the plaintiff and against the defendant for the sum of $1,000, with interest, and the defendant appealed.

*Fuller, Reade & Fuller for plaintiff.*
*H. McD. Robinson for defendant.*

BROGDEN, J. Does the agreement in the face of the note, "the subscribers and endorsers hereof agree to remain and continue bound, . . . notwithstanding any extension or extensions for the time of payment of it, or any part of it," deprive the defendant of the defense of the statute of limitations when it is found as a fact that the maker paid interest on the note to 28 January, 1931, and it appears that the suit was duly instituted on 9 September, 1932?

C. S., 3092, Michie's Code of 1931, provides that: "Where the waiver is embodied in the instrument itself it is binding upon all parties, but where it is written above the signature of the endorser it binds him only." C. S., 3102, provides that a person secondarily liable on negotiable instruments is discharged "by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable," etc.

There are several cases in this jurisdiction which discuss the effect of extension agreements embodied in the face of negotiable instruments, notably: *Bank v. Johnston,* 169 N. C., 526, 86 S. E., 360; *Gillam v. Walker,* 189 N. C., 189, 126 S. E., 424; *McInturff v. Gahagan,* 193 N. C., 147, 136 S. E., 339; *Wrenn v. Cotton Mills,* 198 N. C., 89, 150 S. E., 676; *Corporation Commission v. Wilkinson,* 201 N. C., 344; *Trust Co. v. Clifton,* 203 N. C., 483, 166 S. E., 334; *Franklin v. Franks,* 205 N. C., 96, 170 S. E., 113; *Rasberry v. West,* 205 N. C., 406, 171 S. E., 350. Referring to such extension agreements in the *Wilkinson case, supra,* this Court said: "In order to bind the endorsers two things are essential to such an agreement: (1) waiver of the defense that the time of payment has been extended; (2) mutual assent to a definite time when payment is to be made." Also, in *Wrenn v. Cotton Mills, supra,* the principle is thus stated: "An endorser is, of course, entitled to notice of dishonor; and it may be conceded that by the terms of this contract the defendants waived such notice; also that they waived defenses based upon an extension of the time of payment. The latter waiver, however, imports a legal extension of time which would be effective against the defendants. Granting that the time of payment may be extended by a definite and binding oral agreement, . . . we are confronted by the

general rule that such an agreement must fix a definite time when payment is to be made. The time thus agreed on should be as definite as that which is required when the note is originally executed, the elements of the agreement being certainty, mutuality, and consideration." The last utterance of the Court is found in *Rasberry v. West, supra,* which held that the assent of the parties to an extension of time was binding. The Court remarked that "the plaintiff cannot disregard the express provision of a contract and thereby procure the discharge of a note and the cancellation of her mortgage."

In the case at bar the judge found that the maker paid interest on the note for definite periods of time, to wit, four months, as will appear by reference to said findings, "and that on or about 1 January, 1931, the principal paid the interest thereon to 28 January, 1931, extending the maturity date thereof to said date."

Ordinarily payments made by a principal will not deprive an endorser of the benefit of the defense of the bar of the statute of limitations. *Houser v. Fayssoux,* 168 N. C., 1, 83 S. E., 692; *Franklin v. Franks,* 205 N. C., 96. This principle, however, does not apply when the endorser has consented in the body of the instrument itself to such extensions: *Provided,* of course, that such extensions are for definite periods of time. *Revell v. Thrash,* 132 N. C., 803, 44 S. E., 596. It is contended by the defendant that the *Thrash case, supra,* is overruled by *Trust Co. v. Clifton, supra,* and *Franklin v. Franks, supra.* This contention, however, cannot be sustained for the reason that in the *Franks case, supra,* there was no express waiver in the body of the instrument itself, and in the *Clifton case, supra,* the waiver of extension was not in the body of the instrument, but was contained in an independent contract of guaranty upon the back of the instrument; nor was there "evidence that said note was extended or renewed from time to time."

The plaintiff was not required to exhaust the collateral security before instituting suit against the defendant. In the first place, the judge has found, without exception, that the collateral was worthless, and in the second place the holder of a note has the right to pursue his remedy to collect his debt, nothing else appearing, because "the debt is the primary obligation between the parties, and the note is primary evidence of the debt." *Brown v. Turner,* 202 N. C., 227, 162 S. E., 608.

Upon careful consideration of the entire record the Court is of the opinion that the trial judge ruled correctly.

Affirmed.